[193 N.C. App. 386 (2008)]

IN THE MATTER OF: C.G.A.M., J.C.M.W.

No. COA08-617

(Filed 21 October 2008)

**1. Termination of Parental Rights— guardian ad litem for parent—incarcerated—not incompetent**

The trial court did not abuse its discretion by not appointing a guardian ad litem for a father at a termination of parental rights hearing. Under the statute applicable to this case, N.C.G.S. § 7B-1101.1, the court may appoint a guardian ad litem when the parent is incompetent or has diminished capacity; here, nothing in respondent's conduct at the hearing raised a question about his competency. His lack of capability was mostly due to repeated incarcerations, not to significant mental health issues impacting his ability to parent.

**2. Termination of Parental Rights— grounds—findings— clear, cogent, convincing evidence**

The trial court's findings of fact about the grounds for termination of respondent father's parental rights were supported by clear, cogent, and convincing evidence.

**3. Termination of Parental Rights— findings—required considerations**

The trial court's decision to terminate parental rights was not an abuse of discretion where its findings addressed each of the statutorily required considerations. N.C.G.S. § 7B-1110(a).

Appeal by respondent father from orders entered 4 April 2008 by Judge Peter Mack in Carteret County District Court. Heard in the Court of Appeals 15 September 2008.

*Debra Gilmore, for Carteret County Department of Social Services, petitioner-appellee.*

*Pamela Newell Williams, for Guardian ad Litem.*

*Sofie W. Hosford, for respondent-appellant father.*

JACKSON, Judge.

James Douglas M. ("respondent") appeals from orders terminating his parental rights. The mother voluntarily relinquished her

parental rights prior to the termination hearing and is not a party to this appeal. For the reasons stated below, we affirm.

The Carteret County Department of Social Services ("DSS") first removed C.G.A.M. and J.C.M.W. ("the children") from parental custody and placed them in its custody on 3 January 2006, based upon allegations of domestic violence between the parents, drug use by the mother, unstable housing, and improper care. Respondent ultimately stipulated that the children were dependent and the children remained in DSS custody pursuant to a permanent plan of guardianship with a relative, concurrent with adoption. On 18 December 2006, respondent was ordered to pay $50.00 a month in child support effective 1 January 2007, as well as pay off a $224.00 arrearage at a rate of $25.00 per month.

Pursuant to a permanency planning and review order entered 31 January 2007, defendant was ordered to comply with a number of conditions in order to achieve reunification with the children: 1) obtain and maintain stable employment and housing free from drugs, alcohol, and domestic violence; 2) contribute a reasonable sum to the cost of the children's care; 3) participate in a substance abuse assessment and comply with all recommendations; 4) participate in domestic violence counseling and comply with all recommendations; 5) comply with all probation and parole requirements; 6) complete a parenting assessment and comply with all recommendations; 7) complete an anger management assessment and comply with all recommendations; 8) refrain from illegal activities; 9) submit to random drug screens, including making the results of probation drug screens available to DSS; and 10) maintain weekly contact with a social worker. On 25 July 2007, the Carteret County District Court held respondent in civil contempt of court for falling $524.00 in arrears on his child support obligation and failing to pay $275.00 toward his arrearage by 30 June 2007.

On 6 July 2007, DSS filed petitions to terminate the parental rights of both parents. In its petitions, DSS alleged neither parent could provide proper care, control, and supervision for the children, and were unlikely to be able to do so in the foreseeable future. DSS also alleged that respondent had a lengthy criminal history, had pending criminal charges, had no job or stable housing, and had failed to complete court-ordered substance abuse and domestic violence counseling. DSS further alleged that neither parent had maintained contact with a social worker, had provided any

.tangible items or supplies for the children in the past six months, or had paid child support.

The trial court held a termination hearing on 8 February 2008. DSS called one witness at the hearing—Andrea Gillikin ("Gillikin"), a social worker—and introduced nine documentary exhibits. Gillikin was assigned to the children's case on 6 January 2006. She testified that the children's mother already had relinquished her parental rights.

Respondent stipulated that he was incarcerated at the time the children were removed from parental custody. Gillikin testified that respondent was released from prison on 17 November 2006. Shortly thereafter, respondent began visitation with the children. Visitation continued one hour per week until February 2007.

On 12 January 2007, Gillikin met with respondent prior to a permanency planning and review hearing and gave him a list of low-income housing options in the area, as well as referrals for a substance abuse assessment, domestic violence counseling, parenting assessment, and anger management counseling, so that he could work toward reunification with the children. Gillikin was not aware of any attempts respondent made to contact any of the programs that she recommended to schedule appointments.

Respondent last visited the children on 20 February 2007. The following day he told another social worker that he was seeking help for methadone addiction. He was arrested that day. In March of 2007, respondent called DSS to request a visit with the children. DSS told him that he would have to pass a drug test before he could see them. He did not submit to a drug test at that time, and Gillikin did not hear from him again with respect to visitation. Gillikin further testified that respondent never provided any cards, gifts, or letters for the children, other than two DVDs on one visit and possibly gifts on another visit.

On 30 August 2007, respondent was convicted of a 21 February 2007 offense of felony possession with intent to manufacture, sell, or deliver a schedule II controlled substance. He began serving his sentence on 13 September 2007 and his projected release date is 27 November 2008.

Respondent testified that after he was released from prison in November of 2006, he worked forty to fifty hours per week at a wage of $5.50 per hour. He earned $0.70 per day working on the

IN RE C.G.A.M. & J.C.M.W.

[193 N.C. App. 386 (2008)]

road crew while in prison. However, he testified that he never paid child support for the children or provided other money for their care.

While incarcerated, respondent began an anger management class, but was unable to complete it because he was moved to another facility. In the new facility, he had enrolled in anger management classes but had not yet begun them at the time of the hearing. He was also enrolled in narcotics anonymous ("NA"), alcoholics anonymous ("AA"), a GED program, and a cognitive behavioral intervention ("CBI") class. At the time of the termination hearing, he was actively attending NA and AA meetings, but had not yet begun classes to obtain his GED or the CBI class. Respondent expressed a desire to be a part of his children's lives after his release from prison in November 2008. His criminal record was introduced into evidence without objection.

On 4 April 2008 the trial court filed orders terminating respondent's parental rights as to both children. As grounds for termination of respondent's parental rights, the trial court concluded that: 1) respondent neglected the children as the term is defined in North Carolina General Statutes, section 7B-101(15) by willful abandonment; 2) he willfully left the children in foster care for more than twelve months without making reasonable progress under the circumstances to correct the conditions that led to removal; 3) he was incapable of providing the children with proper care and supervision, and there was a reasonable probability that the incapability would continue for the foreseeable future; and 4) he willfully failed to provide any financial support towards the children's cost of care since entering foster care.

[1] Respondent first argues that the trial court erred when it did not appoint him a guardian *ad litem* at the termination hearing. We disagree.

Respondent contends that because the petitions alleged that he was incapable of caring for his children and that the incapability likely would continue in the future, the trial court had a duty to appoint a GAL on his behalf. However, the cases upon which he relies were decided pursuant to prior statutory authority.

North Carolina General Statutes, section 7B-1101.1 became effective on 1 October 2005 and was made applicable to petitions or actions filed on or after that date. 2005 N.C. Sess. Laws 398 § 19. The

instant petitions were filed on 6 July 2007. Therefore, section 7B-1101.1 is the statute applicable to this case.

The language in former sections 7B-602 (governing appointment of a GAL for an abuse/neglect/dependency hearing) and 7B-1101 (governing appointment of a GAL for a termination of parental rights hearing) which required a trial court to appoint a GAL when the petition alleged incapability to care for the juvenile due to substance abuse, mental retardation, mental illness, or organic brain syndrome was deleted from those sections when section 7B-1101.1 was enacted. *See* 2005 N.C. Sess. Laws 398 §§ 2, 14. Similar language was not incorporated into the newly enacted section 7B-1101.1. *See* 2005 N.C. Sess. Laws 398 § 15.

Section 7B-1101.1 provides that a trial court may appoint a guardian *ad litem* for a parent, "if the court determines that there is a reasonable basis to believe that the parent is [(1)] incompetent or [(2)] has diminished capacity and cannot adequately act in his or her own interest." N.C. Gen. Stat. § 7B-1101.1(c) (2007).

"A trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a *substantial* question as to whether the litigant is *non compos mentis*." *In re J.A.A. & S.A.A.*, 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005) (citing *Rutledge v. Rutledge*, 10 N.C. App. 427, 432, 179 S.E.2d 163, 166 (1971)) (emphasis added). Whether to conduct such an inquiry is in the sound discretion of the judge. *Id.*

Here, nothing in respondent's conduct at the hearing raised a question about his competency. He testified on his own behalf and asserted his own interest in retaining his parental rights. Therefore, the trial court was within its discretion when it did not appoint a guardian *ad litem*. Respondent's contentions here stand in marked contrast to those raised in *In re. N.A.L. & A.E.L.*, 193 N.C. App. 114, 666 S.E.2d 768 (2008). In that case, this Court reversed the termination order and remanded so that a hearing could be held to determine whether a GAL was required. *Id.* at 119, 666 S.E.2d at 772. There, the petition alleged the children were dependent because the mother had "problems in controlling her anger outbursts; [she had a] significant tendency to be aggressive towards others, including her child; and [she had a] lack of understanding of her prior neglect of the minor child." The mother's IQ was 74; she had a personality disorder; she had borderline intellectual functioning; and she had "significant men-

tal health issues which impact[ed] her ability to parent th[e] child and meet his needs." *Id.* at 118-19, 666 S.E.2d at 771. Here, defendant's incapability was due in large part to his repeated incarceration, not "significant mental health issues which impact [his] ability to parent[.]" Therefore, this argument is without merit.

**[2]** Respondent also argues, in effect, that the trial court's findings of fact with respect to the grounds for termination of his parental rights were not supported by clear, cogent, and convincing evidence. We disagree.

At the adjudicatory stage, the petitioner has the burden to prove that at least one ground for termination exists by clear, cogent, and convincing evidence. N.C. Gen. Stat. § 7B-1109(f) (2007); *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001) (citations omitted). Review in the appellate courts is limited to a determination of whether clear, cogent, and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *appeal dismissed, disc. rev. denied*, 353 N.C. 374, 547 S.E.2d 9 (2001) (citation omitted). Unchallenged findings of fact are binding on this Court. *In re S.D.J.*, 192 N.C. App. 478, 486, 665 S.E.2d 818, 824 (2008) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("[w]here no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal")). " '[F]indings of fact made by the trial court . . . are conclusive on appeal if there is evidence to support them.' " *In re H.S.F.*, 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (quoting *Hunt v. Hunt*, 85 N.C. App. 484, 488, 355 S.E.2d 519, 521 (1987)).

Pursuant to North Carolina General Statutes, section 7B-1111, one of the grounds for terminating parental rights is the fact that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than [twelve] months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2007). To establish this ground, the trial court must find by clear, cogent, and convincing evidence that: 1) the parent willfully left the child(ren) in foster care or placement outside the home for more than twelve months, and 2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child(ren). *In re O.C. & O.B.*, 171 N.C. App.

**IN RE C.G.A.M. & J.C.M.W.**

[193 N.C. App. 386 (2008)]

457, 464-65, 615 S.E.2d 391, 396, *disc. rev. denied*, 360 N.C. 64, 623 S.E.2d 587 (2005).

> A finding of willfulness does not require a showing of fault by the parent. Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort. A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children.

*Id.* at 465, 615 S.E.2d at 396 (citations and internal quotation marks omitted).

With respect to this ground for termination, the trial court made the following unchallenged findings of fact by clear, cogent, and convincing evidence:

> 13. [The children] were placed in the legal custody of CCDSS on or about January 3, 2006. They have been continuously in the legal custody of CCDSS since that date.
>
> . . . .
>
> 18. Upon [respondent's] release [from prison], the assigned CCDSS social worker, Andrea Gillikin, met with the father. Ms. Gilliken notified the father that, at minimum, he would need to secure stable housing and employment to work toward reunification.
>
> . . . .
>
> 20. This Court . . . held a permanency planning and review hearing on January 12, 2007. Prior to the hearing, Ms. Gillikin met with the father and went over the agency's recommendations for him. The father did not indicate that any of the recommendations or requests would be a problem. The Court adopted the agency's recommendations and issued [] an order that:
>
> The father shall complete the following services and comply with the following conditions to demonstrate that he is actively working towards reunification:
>
> • obtain and maintain stable employment and housing; housing shall be free from drugs, alcohol, and domestic violence.
>
> • contribute a reasonable sum to the cost of the children's care.
>
> • participate in a substance abuse assessment and comply with all recommendations.

- participate in domestic violence counseling and comply with all recommendations.

- comply with all probation/parole requirements.

- complete a parenting assessment and comply with all recommendations.

- comp[l]ete an anger management assessment and comply with all recommendations.

- refrain from illegal activities[.]

- submit to random drug screens—he shall make results of probation drug screens available to DSS and the GAL by today's order of the Court.

- set up an appointment with the social worker within the next 10 days and maintain weekly contact with the social worker.

These findings of fact, not having been challenged on appeal, are binding on this Court. *In re S.D.J.*, 192 N.C. App. at 486, 665 S.E.2d at 824. The trial court made one additional finding of fact relevant to this ground, which has been challenged on appeal: "21) The father failed to complete any of the court-ordered services and failed to meet the conditions." There is clear, cogent, and convincing evidence of record that although respondent may have begun to address some of the items listed in finding of fact number 20, he did *not complete them.*

Because these findings of fact are supported by clear, cogent, and convincing evidence, and they in turn support the trial court's conclusion that this ground for termination was established, this argument is without merit.

We note that the trial court concluded that grounds existed pursuant to sections 7B-1111(a)(1), (2), (3), (6), and (7) of the North Carolina General Statutes to terminate respondent's parental rights. Although respondent argues that other grounds are not supported by the evidence, we need not address his arguments as to those other grounds. *See In re Pierce*, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984) (a finding of one statutory ground is sufficient to support the termination of parental rights). To the extent that respondent assigned error to additional findings of fact made by the trial court, we need not address those assignments of error as they pertain to the other grounds for termination of his parental rights.

IN RE C.G.A.M. & J.C.M.W.

[193 N.C. App. 386 (2008)]

[3] Finally, respondent argues that the trial court's decision to terminate parental rights was an abuse of discretion. We disagree.

Once the trial court has determined that a ground for termination exists, it moves on to the disposition stage, where it must determine whether termination is in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a) (2007). The trial court's decision at this stage is reviewed for an abuse of discretion. *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002) (citation omitted).

In determining the best interests of the child, the court must consider:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2007).

Here, the trial court's order demonstrates that the court did not abuse its discretion when it terminated respondent's parental rights. The trial court made the following findings of fact in the best interest phase of the hearing:

42. [The ages of the children].

43. [The] permanent plan is adoption. [The children are] placed in a pre-adoptive home . . . and [have] been living in that home for fourteen (14) months. The pre-adoptive parents have strongly indicated their desire to adopt the children; the likelihood of adoption is high.

44. Neither [child] asks about their parents.

45. [The children] wish to be adopted by their current pre-adoptive family. They feel secure and loved as members of this family.

46. Ms. Gillikin has personally observed the children's interactions with their pre-adoptive parents. She observed that [the children] are blossoming and thriving in their current pre-adoptive home.

47. CCDSS would support adoption by the pre-adoptive parents.

48. Termination of parental rights would assist [the children] in obtaining the permanency of adoption.

49. It is in the best interests of [the children] for [their] father's parental rights to be terminated.

These findings of fact address each of the statutorily required considerations. Therefore, the court did not abuse its discretion in terminating respondent's parental rights.

Affirmed.

Judges McCULLOUGH and STEPHENS concur.