IN RE: J.D., D.D., J.D., T.D.
No. COA08-1401
Court of Appeals of North Carolina
Filed May 5, 2009
This case not for publication
E. Marshall Woodall and Duncan B. McCormick for petitioner-appellee.
Mary McCullers Reece for respondent-appellant mother.
Ryan McKaig for respondent-appellant father.
N.C. Administrative Office of the Courts, by Associate Legal Counsel, Pamela Newell Williams, for guardian ad litem.
GEER, Judge.
Respondent father and respondent mother appeal from the trial court's order terminating their parental rights with respect to their minor children. Respondent father primarily contends that the trial court erred in failing to timely appoint a guardian ad litem ("GAL") to represent him and that the trial court should have granted the GAL's motion for a continuance. We hold that respondent father has failed to show that the trial court abused its discretion by failing to appoint a GAL before it was requested to do so by petitioner Harnett County Department of Social Services ("DSS").
Respondent mother contends that the trial court erred in terminating her parental rights as neither statutory ground relied upon by the court is supported by the evidence. We, however, hold that the trial court's findings of fact  based on clear, cogent, and convincing evidence  support its determination that grounds exist to terminate respondent mother's parental rights based on the probability of future neglect. Accordingly, we affirm the trial court's order terminating both respondents' parental rights.

Facts
Respondent mother is the biological mother of "Don," born in 1999; "Jill," born in 2001; "John," born in 2002; and "Ted," born in 2006.[1] Respondent father, who was 83 years old at the time of the hearing below, is the biological father of Don, Jill, and John, but not of Ted. The identity of the biological father of Ted is unknown. DSS has been involved with respondent mother and the children since September 2000, with DSS having received over 12 child protective services reports during that time. DSS provided case management and prevention services.
On 7 April 2006, after an investigation of another child protective services report, DSS filed petitions alleging that Don, Jill, and John were neglected juveniles. The trial court entered an order granting DSS nonsecure custody of the three juveniles the same day. Respondent father was arrested on 10 June 2006 and charged with first degree statutory sexual offense, crimes against nature, and taking indecent liberties with the three minor children.
Following a hearing on 12 May 2006, the trial court entered an order on 18 October 2006, with the consent of respondents, adjudicating the juveniles as neglected. The trial court found that respondents had been using cocaine and consuming alcohol in the presence of and while caring for their children; that the drug and alcohol use had adversely affected respondents' ability to properly care for the children and thus the children were placed at risk; and that respondents engaged in acts of domestic violence in the presence of the children, placing them in fear of harm and creating the risk of emotional injury. The dispositional order established a plan of reunification with the parents.
Ted was born on 14 August 2006, tested positive for cocaine at birth, and was immediately removed from respondent mother's custody. DSS filed a petition on 18 August 2006 alleging that Ted was a neglected juvenile. The trial court, with the consent of the mother, adjudicated Ted to be neglected in an order entered 15 June 2007.
In orders entered 1 June 2007 and 13 July 2007, the court released DSS from reunification efforts for all four children and changed the permanent plan for the children from reunification to adoption. On 30 July 2007, DSS filed motions to terminate respondent mother's parental rights to all four children and respondent father's parental rights to Don, Jill, and John. Respondent mother subsequently filed a motion seeking reunification with her children.
During a hearing on 22 February 2008 on various motions filed by respondent mother, the trial court inquired into the need for the appointment of a GAL to assist each of the parents in the termination proceedings. The trial court ultimately appointed a GAL under Rule 17 of the Rules of Civil Procedure for each parent over the objection of each parent's counsel. The trial court then continued the proceedings until 14 March 2008. In the interim, DSS filed an amended motion to terminate respondents' parental rights on 28 February 2008, specifying that respondent father was not Ted's biological father and that the biological father was unknown.
Prior to commencing the hearing on 14 March 2008, the trial court heard an oral motion by Jason Wunsch, respondent father's GAL, requesting a continuance. That motion was denied. The hearing was, however, halted after two witnesses had testified when, at the start of the testimony of a third witness, respondent mother objected to DSS' attempt to rely upon 77 pages of discoverable documents that had not previously been provided to respondent mother. The hearing was scheduled to resume 2 May 2008, but it was continued until 16 May 2008 because a necessary witness for respondent mother was not available on 2 May 2008. The hearing resumed on 16 May 2008.
In an order entered 5 August 2008, the trial court concluded that grounds existed for terminating respondent father's parental rights with respect to Don, Jill, and John and respondent mother's parental rights with respect to all four children and that it was in the children's best interest to do so. The trial court terminated respondent father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111 (a)(1) (2007) (neglect), N.C. Gen. Stat. § 7B-1111(a)(2) (failure to make reasonable progress in addressing the conditions leading to the removal of the children), N.C. Gen. Stat. § 7B-1111(a)(5) (failure to legitimate), and N.C. Gen. Stat. § 7B-1111(a)(7) (willful abandonment). As for respondent mother, the trial court terminated her parental rights based on N.C. Gen. Stat. § 7B-1111(a)(1) and (2). Respondents timely appealed to this Court.

Respondent Father's Appeal
Although respondent father assigned error to numerous findings of fact in the termination of parental rights order, he has not brought those assignments of error forward in his brief. Those assignments of error are, therefore, "taken as abandoned." N.C.R. App. P. 28(b)(6). Instead of challenging the merits of the trial court's termination of parental rights order, respondent father argues that the trial court erred in failing to timely appoint a GAL for respondent father, erred in failing to specify the type of guardian it was appointing, and erred in denying the GAL's motion for a continuance given questions regarding respondent father's competency.
N.C. Gen. Stat. § 7B-1101.1(c) (2007) provides:
On motion of any party or on the court's own motion, the court may appoint a guardian adlitem for a parent if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. The parent's counsel shall not be appointed to serve as the guardian ad litem.
Pursuant to N.C. Gen. Stat. § 7B-1101.1(c), "'[a] trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a substantial question as to whether the litigant is non compos mentis.'" In re C.G.A.M., J.C.M.W., ___ N.C. App. ___, ___, 671 S.E.2d 1, 4 (2008) (quoting In re J.A.A. & S.A.A., 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005)). Whether the circumstances are sufficient to raise a substantial question as to the party's competency is a matter to be initially determined in the sound discretion of the trial judge. Id. at ___, 671 S.E.2d at 4.
To the extent that respondent father contends that the trial court should have appointed him a GAL in connection with the initial juvenile petitions, that issue is not properly before us. The subject of this appeal is solely the order terminating respondent father's parental rights. As this Court has previously stated, even assuming arguendo that a trial court committed error by failing to appoint a GAL for a parent during the initial adjudication proceedings, "we reject [the parent's] argument that this bears a legal relationship with the validity of the later order on termination." In re O.C. & O.B., 171 N.C. App. 457, 462, 615 S.E.2d 391, 394-95, disc. review denied, 360 N.C. 64, 623S.E.2d 587 (2005). See also In re L.A.B., 178 N.C. App. 295, 302, 631 S.E.2d 61, 66 (2006) ("Even assuming arguendo that the trial court committed error by its failure to appoint a GAL for respondent mother for the initial adjudication hearing, this Court has recently held that such an error does not `bear[] a legal relationship with the validity of the later order on termination.'" (quoting O.C. & O.B., 171 N.C. App. at 462, 615 S.E.2d at 394-95)).
With respect to the termination of parental rights proceedings, respondent father argues that a GAL "should have been appointed much sooner, particularly since the Department had alleged that the Respondent Parents had engaged in drug abuse and exhibited bizarre behavior. Also, the Department and the court were well aware of [respondent father's] advanced age and the likelihood of senility." As this Court has stressed, a trial court is not required to appoint a GAL in every case in which cognitive limitations or substance abuse is alleged to exist. J.A.A. & S.A.A., 175 N.C. App. at 71, 623 S.E.2d at 49.
Notably, in this case, respondent father does not cite to any particular allegation or any conduct, prior to the hearing at which the GAL was appointed, in support of his argument. We cannot determine to what "bizarre behavior" respondent father is referring since the juvenile petition and the motion for termination of parental rights contain only allegations regarding substance abuse and domestic violence. The criminal charges regarding sexual abuse do not necessarily suggest incompetence or the need for a GAL under N.C. Gen. Stat. § 7B-1101.1(c). We also cannot assume that respondent father's age necessarily means a likelihood of senility exists.
We note further that respondent father's counsel objected to the appointment of a GAL, indicating that counsel did not believe it was necessary. Without any specific showing by respondent father on appeal that the trial court had reason to believe, prior to 22 February 2008, that respondent father was incompetent or had diminished capacity and could not adequately act in his own interest, we cannot conclude that the trial court erred in failing to appoint a GAL for respondent father earlier.
Respondent father next argues that the trial court erred in failing to specify the type of guardian appointed to represent respondent father in the 22 February 2008 order. His argument is predicated on the fact that the order was a printed form provided by the Administrative Office of the Courts for appointing GALs for juveniles (AOC-J-300 Rev. 7/95). Respondent father asserts that "a guardian ad litem appointed pursuant to 7B-1101.1 is not synonymous with a guardian appointed pursuant to Rule 17 or Chapter 35A" and notes that the trial court did not identify the authority pursuant to which the GAL was being appointed. Respondent father contends, therefore, that his GAL was "a guardian in name only" because the guardian's duties and the powers to carry out those duties were not clearly defined.
This Court has previously observed that the powers of a GAL appointed under N.C. Gen. Stat. § 7B-1101.1 are different from those of a guardian appointed under Rule 17 of the Rules of Civil Procedure and Chapter 35A of the General Statutes. See generally In re L.B., 187 N.C. App. 326, 329, 653 S.E.2d 240, 242 (2007) (differentiating between the authority of a GAL appointed pursuant to N.C. Gen. Stat. § 7B-1101.1 as opposed to those of a guardian appointed under Rule 17 and Chapter 35A), aff'd per curiam, 362 N.C. 507, 666 S.E.2d 751 (2008). Nevertheless, the record contains no indication that respondent father, his trial counsel, or his GAL objected to the order of appointment or sought clarification of the GAL's authority during the termination of parental rights proceeding.
As respondent father failed to raise this issue in the trial court, he is precluded from raising it now for the first time on appeal. See N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). In any event, respondent father has also failed to identify any manner in which he was prejudiced by the trial court's failure to distinguish between N.C. Gen. Stat. § 7B-1101.1 and Rule 17. Accordingly, this assignment of error is overruled.
Finally, respondent father contends that the trial court erred in denying his GAL's oral motion for a continuance to seek a competency evaluation. While the trial court orally denied the motion for a continuance at the 14 March 2008 hearing, the court subsequently entered a written order on 13 June 2008, denying the GAL's motion to continue based on its finding that the "parties have had sufficient time to properly prepare for hearing and request any needed examination[.]" We lack jurisdiction to review respondent father's argument regarding the denial of a continuance because his notice of appeal does not include the trial court's 13 June 2008 order, but rather references only the 5 August 2008 order terminating his parental rights.
Rule 3(d) of the Rules of Appellate Procedure requires the notice of appeal to "designate the judgment or order from which appeal is taken . . . ." As a result of Rule 3, an appellant challenging an order regarding a motion to continue must reference that order in the notice of appeal in order to vest jurisdiction in this Court to review that order. See In re C.B., J.B., TH.B. & TI.B., 180 N.C. App. 221, 222 n.3, 636 S.E.2d 336, 337 n.3 (2006) ("However, because the Father did not include the order granting the continuance in the Notice of Appeal, we dismiss this assignment of error under Rule 3 of the North Carolina Rules of Appellate Procedure."), aff'd per curiam, 361 N.C. 345, 643 S.E.2d 587 (2007). Because the order is not mentioned in the notice of appeal, we cannot consider respondent father's arguments. See also In re L.L., 172 N.C. App. 689, 696, 616 S.E.2d 392, 396 (2005) (holding that this Court had no jurisdiction to review intervention order when appellants did not reference order in notice of appeal).
We note, in any event, that the basis for the GAL's request for a continuance was a need to obtain a psychological evaluation of respondent father to determine whether he was competent to stand trial and assist his counsel with his defense. As the trial court, however, properly noted: "[T]his is the reason the Guardian ad Litem was appointed, Mr. Wunsch, because of some question about his competency evidently before. Now, we're not in criminal court. . . . Now, this is the civil case. This is the reason why it's there. So, I appreciate you bringing it to the Court's attention. We're trying the case." Respondent father's incompetency to stand trial does not preclude a civil proceeding so long as a GAL has been appointed. Moreover, respondent father has made no argument on appeal how he was prejudiced by the denial of the continuance on 14 March 2008 in light of the two-month break in the hearing.

Respondent Mother's Appeal
Respondent mother contends that neither ground relied upon by the trial court in terminating her parental rights is supported by clear, cogent, and convincing evidence. Under the North Carolina Juvenile Code, a termination of parental rights proceeding involves two distinct phases: an adjudicatory stage and a dispositional stage. In re Fletcher, 148 N.C. App. 228, 233, 558 S.E.2d 498, 501 (2002). "First, in the adjudicatory stage, the trial court must determine whether the evidence clearly and convincingly establishes at least one ground for the termination of parental rights listed in N.C. Gen. Stat. § 7B-1111." Id. After the petitioner has proven at least one ground for termination, "the trial court proceeds to the dispositional phase and must consider whether termination is in the best interests of the child." In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003); see also N.C.Gen. Stat. § 7B-1110(a) (2007) ("[T]he court shall determine whether terminating the parent's rights is in the juvenile's best interest.").
In this case, we hold that the trial court properly concluded that the ground of neglect, N.C. Gen. Stat. § 7B-1111(a)(1), existed. "Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground . . . found by the trial court." In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004).
N.C. Gen. Stat. § 7B-1111(a)(1) provides that the trial court may terminate parental rights if the parent has neglected the juvenile within the meaning of N.C. Gen. Stat. § 7B-101(15) (2007). That statute, in turn, defines a "neglected juvenile" as a child
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15).
DSS, as the petitioner in this case, "b[ore] the burden of showing by clear, cogent and convincing evidence that such neglect exist[ed] at the time of the termination proceeding." In re Ballard, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984). When, as here, the children have not been in the custody of a parent for a significant period of time prior to the termination hearing, "the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." In re Pierce, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002). "[P]arental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile[s] were returned to [their] parents." In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000).
Here, there is no dispute that the children were previously adjudicated as neglected. In addition, the trial court specifically determined that there was a "likelihood that if the juveniles were returned to the mother they would be at risk of harm or neglect." The trial court made the following findings of fact supporting that determination:
41. Notwithstanding the perceived accomplishment of the respondent mother, she failed to demonstrate the ability to appropriately parent the juveniles. . . . The evidence offered by the petitioner as well as the evidence offered by the mother failed to demonstrate to the court that the mother has made reasonable progress under the circumstances to remove the conditions which led to the removal of the juveniles. Those conditions involved more than substance abuse; those conditions involve the parental ability and skill to protect the juveniles and become aware of the developmental needs of the juveniles as was presented by the evidence before the court.
. . . .
52. The three older juveniles [Don, Jill, and John] were referred to ONIPA Psychological and Consulting Services, PLLC [ONIPA] in September 2006, by Lutheran Family Services [agency who licensed the foster home in which the juveniles had been placed]. The purpose of the reference was to address posttraumatic stress disorder in the juveniles allegedly brought on by maltreatment in the family and a parallel issue by report that the juveniles allegedly witnessed and experienced sexual and emotional maltreatment by their father. The process involved making an evaluation and plan of treatment.
53. The oldest child, [Don], presented with oppositional and defiant behaviors primarily in the school, community and to some extent in the foster home.
54. The second child, [Jill], recently entered kindergarten and was experiencing extreme aggressive behaviors including kicking, biting, hitting and cursing children and adults in the school setting.
55. The youngest child, [John], presented with minimal verbal skills without any apparent medical or physical condition or cause. He does not exhibit clear and audible language skills. By report of the foster parent, [John] displays repeated sexualized behaviors toward his brother [Don] and at times he displays catatonic states and regularly urinates and at times defecates on himself in an apparent purposeful manner [typically when upset].
. . . .
61. Dr. Kambon has diagnosed each juvenile with posttraumatic stress disorder. All the juveniles have academic needs; [Don] failed the first grade and [Jill]'s behaviors contributed to expulsion and special classes. [Jill] is believed to be capable of class work as evidence [sic] by her responses to improvement with the aid of additional teachers in the classroom [smaller teacher to studentratio]. [John] is suffering from developmental delay and Dr. Kambon described that he has begun to leap forward since attending speech and occupational therapy.
62. The court adopted Dr. Kambon's conclusions that the three eldest children are in ongoing need for therapy to address the trauma experienced in their biological home. Stability is crucial to their healing process in an environment where they are uninhibited and free to express their needs, wants, and concerns within a treatment environment. Dr. Kambon expressed her belief that the prognosis for all three juveniles is good.
63. There is no evidence of any relationship existing between the biological mother and juvenile [Ted]; he has never lived in her home and the visits between them do not establish any picture of a relationship.
. . . .
65. The relationship between the three elder juveniles and their mother, especially since their removal from the family home on April 6, 2006, has not been very strong or parental. These juveniles have experienced posttraumatic stress disorders as a result of experiences in the family home. The mother failed to identify the disorders or was otherwise unable to recognize the needs of the juveniles in the areas of their development as well as the maltreatment being suffered at the hands of their father [as expressed by them during medical examination and therapy evaluation and treatment]. It is significant that these children are not now making reference to their biological parents during therapy treatment.
(Bracketed material, except for juvenile names and [sic], original.) Respondent mother has only assigned error to findings of fact 41, 63, and 65, and, therefore, the remaining findings of fact are binding on appeal. J.A.A. & S.A.A., 175 N.C. App. at 68, 623 S.E.2d at 46. Respondent mother's assignments of error regarding findings of fact 63 and 65 are not brought forward in her brief and, therefore, are abandoned. N.C.R. App. P. 28(b)(6). Only finding of fact 41 is specifically challenged on appeal.
The evidence presented at trial, however, showed, as finding of fact 41 stated, that respondent mother did not understand the academic, developmental, emotional, and psychological needs of her children. The evidence also indicates that she has failed to make progress toward being able to address these concerns in the future. The evidence presented by DSS revealed that during supervised visits from December 2006 through May 2007, respondent mother did not demonstrate an ability to appropriately supervise or discipline her children and made inappropriate comments to them. After the visits, the children would misbehave or make suicidal statements.
While respondent mother argues that these visits should not be determinative regarding her capacity to parent at the time of the 16 May 2008 hearing, respondent mother's testimony at that hearing was telling. Respondent mother was asked, "What kind of problems do you think these children have now?" She responded:
The problems are statements like they miss their mom, you know. The things that I heard that my kids do, my kids are not no bad kids. They're not no mean kids. I didn't have no problems out of my kids of what [Ted] was doing  is doing at school now, things like that. My kids are good kids. They're adorable kids, you know; and, evidently for someone to say that about my kids, I did do something right to where they're at today.This statement reflects a lack of awareness of her children's post-traumatic stress disorder as well as their severe behavioral and academic problems.
Although respondent mother has made significant progress in dealing with her personal issues, particularly substance abuse, the record indicates that she has not fully acknowledged serious concerns facing her children and that she has made insufficient progress in developing the parenting skills to deal with these issues in the future. Respondent mother's argument that her progress should not be judged by "a standard of excellence which was difficult for even the trained parents and treatment team to achieve" mistakes the issue. Even if respondent mother had made the necessary progress to appropriately parent an untroubled child, her children do not fall in that category, but rather are children that present a challenge for even trained parents and a treatment team. Her children's substantial problems together with respondent mother's limited parenting skills give rise to a likelihood that the past neglect will be repeated in the future.
The trial court's unchallenged findings together with finding of fact 41, which is amply supported by the record, in turn support the trial court's conclusion that grounds exist for terminating respondent mother's parental rights due to the prior neglect of her children and the likelihood of a repetition of neglect if the children are returned to respondent mother's custody. Since respondent mother does not argue that the trial court abused its discretion in terminating her parental rights, we affirm the trial court's order.
Affirmed.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] The pseudonyms Don, Jill, John, and Ted are used throughout this opinion to protect the minor children's privacy and for ease of reading.