ZACHARY, Judge.
Respondent-mother (mother) appeals from the trial court's order terminating her parental rights to her son, C.W.G. ("Connor").[1] For the following reasons, we affirm.
I. Background
Conner was born to mother and Jerry Green on 5 December 2002. Jerry died from a heart attack in 2012. Mother has a long history of marijuana use, and in September 2013, she was convicted for possession of drug paraphernalia and marijuana. As a result, mother was placed on probation until March 2016.[2]
On 7 March 2014, the Cleveland County Department of Social Services (DSS) received a report that mother had abused and neglected Connor. Specifically, the report alleged that mother was smoking marijuana in Connor's presence, had "smacked" him on the face, and suffered from untreated mental health issues. Responding to the report, a DSS social worker interviewed Connor and mother at their residence. Connor expressed concern about his mother's psychological well-being and stated that she would often deny that Jerry was dead. On one occasion, mother told Connor that Jerry was in a cryogenic laboratory awaiting cloning. In her interview with DSS, mother admitted that she was on probation for drug possession and stated that she had "los[t] it and smacked [Connor] in the face because she felt like he was smarting off at her[.]" Upon further investigation, the DSS social worker learned that mother had ceased her mental health treatment in November 2013, and that mother had stopped taking the medications associated with that treatment.
On 19 March 2014, DSS filed a petition alleging that Connor was a neglected and dependent juvenile. That same day, DSS was granted nonsecure custody of Connor, who was later placed in foster care. Pursuant to a pre-adjudication case plan, mother agreed to complete a parenting assessment, undergo a substance abuse assessment, and submit to random drug screens.
In April 2014, mother underwent a psychological evaluation and was diagnosed with Paranoid Schizophrenia. The evaluating psychologist also concluded that mother "currently lack[ed] the abilities to provide [Conner with the] appropriate care, supervision, and support" that he needed. Upon the psychologist's recommendation, a guardian ad litem was appointed to represent mother in the proceedings concerning DSS's neglect and dependency petition. Mother submitted to a substance abuse assessment in early May 2014. The assessment recommended that mother participate in a three-session-per-week Substance Abuse-Intensive Outpatient Program (SAIOP) conducted by Phoenix Counseling Center in Gaston County. Mother began attending the SAOIP on 12 May 2014, but she attended only nine sessions out of the scheduled twenty-one sessions in the first seven weeks.
DSS's petition was heard in Cleveland County District Court on 9 July 2014, and six days later, the trial court entered an Adjudication and Disposition Order. Although mother specifically denied "the allegations ... regarding [Connor's] statements to the Social Worker regarding ... mother's substance abuse," she stipulated to the remaining allegations contained in the petition. Mother further stipulated to a finding of dependency "based upon [her] mental illness." Acknowledging its agreement with this stipulation, DSS informed the trial court that it would "not proceed on the allegations of neglect set forth in the petition."
As a result, the trial court adjudicated Connor to be a dependent juvenile. The disposition portion of the trial court's order adopted a case plan that required mother to "successfully complete parenting classes [and] ... demonstrate appropriate parenting skills[,]" follow recommendations for psychiatric treatment and medication, "submit to regular random drug testing and ... demonstrate her ability to maintain sobriety," and "comply with all recommendations for [substance abuse] treatment." Mother was granted supervised visitation with Connor for one hour per week along with fifteen minutes per week phone contact.
Mother transferred her substance abuse treatment to Phoenix Counseling's Cleveland County location on 14 July 2014, and her attendance at weekly sessions improved. Still, mother tested positive for marijuana on the majority of her drug screens (13 out of 17) between July and September 2014. Three of her drug screens during this period were positive for Xanax while one was positive for Klonopin, both of which are benzodiazepines. As a result, mother was recommended for a higher level of care, Substance Abuse Comprehensive Outpatient Treatment (SACOT).
After conducting its first review hearing on 1 October 2014, the trial court ordered DSS to maintain reunification efforts. Mother began the SACOT program on 7 October 2014. She attended sessions regularly and passed the majority of her drug screens (24 out of 26), although two screens were positive for benzodiazepines. Despite these positive developments, mother gained little insight into, and refused to take responsibility for, her substance abuse issues. She also exhibited troubling mental health symptoms, accusing the staff of Phoenix Counseling of tampering with her attendance records, blaming family and friends for her positive drug screens, and asserting that her pharmacist conspired with Connor's foster parents to cause her to fail her drug screens. At one point, mother claimed that individuals were putting benzodiazepines in her soft drinks. [R p 216] On 3 December 2014, mother left the SACOT program because she "was not happy with [it]."
After conducting a permanency planning hearing on 10 December 2014, the trial court entered an order that continued DSS's custody of Connor and sustained reunification efforts. The court also continued mother's in-person and telephonic visits with Connor, even though mother sometimes displayed troubling behavior during visitation. Specifically, despite repeated admonishments from the trial court, mother continued to talk with Connor about her mental health and her financial issues. Mother also spoke negatively about other family members and told Connor that he was coming home. Connor hoped to be reunited with mother, but he also expressed his desire to be adopted by his foster family if reunification was impossible. As of December 2014, mother had commenced, but ultimately abandoned, two parenting classes. Mother began a new parenting class in February 2015. At this point in time, Connor told his social worker that he wanted "to be adopted by his foster parents."
Following mother's discharge from the SACOT program, DSS referred her to Preferred Choice Healthcare for substance abuse treatment. Mother missed her first four scheduled appointments, but kept her initial, in-take appointment on 16 February 2015. Although mother was undergoing psychiatric treatment and medication management, she told DSS on numerous occasions that she was not taking her prescribed medications, which did not include any benzodiazepines. After holding a second permanency planning hearing on 18 February 2015, the trial court entered an order that ceased reunification efforts, and that sanctioned a permanent plan of adoption with a concurrent plan of guardianship. Mother completed her parenting class in mid-April 2015 subject to "concerns about [her] ability to implement solutions and use her parenting skills because of her passive nature."
On 30 April 2015, DSS filed a petition to terminate mother's parental rights to Connor and alleged four statutory grounds for termination: (1) neglect; (2) dependency; (3) willful failure to make reasonable progress toward correcting the conditions that led to removal; and (4) willful failure to pay a reasonable portion of the cost of care for Connor. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6) (2015). Roughly one month later, mother filed her answer and a motion to dismiss the petition for "failure to state a claim upon which relief [could] be granted."[3] There is no indication that the trial court formally denied mother's motion to dismiss, but the court plainly concluded that it had the authority to proceed with DSS's termination action.
Although mother completed her recommended course of substance abuse treatment in June 2015, she was unable to graduate from the program due to eight drug screens that were positive for benzodiazepines. Between August 2015 and January 2016, the trial court conducted four hearings on the termination petition. On 17 March 2016, the trial court entered an order terminating mother's parental rights on the grounds of neglect, dependency, and willfully leaving Connor in DSS's custody without making reasonable progress in correcting the conditions that led to his removal. The court further concluded that termination of mother's parental rights was in Connor's best interest. Mother appeals.
II. Standard of Review
Every termination of parental rights proceeding involves two distinct stages: adjudication and disposition. In re D.H. , 232 N.C. App. 217, 219, 753 S.E.2d 732, 734 (2014) (citation omitted). At "the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)." Id. ; see also N.C. Gen. Stat. § 7B-1109(e) (2015). Appellate review of the trial court's adjudication is limited to a determination of whether clear, cogent, and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. In re Huff , 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000) (citation omitted), appeal dismissed , disc. rev. denied , 353 N.C. 374, 547 S.E.2d 9 (2001). "Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt." In re Nesbitt , 147 N.C. App. 349, 355, 555 S.E.2d 659, 664 (2001) (citations omitted). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." In re S.C.R. , 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (citation and quotation marks omitted), appeal dismissed , 363 N.C. 654, 686 S.E.2d 676 (2009). In addition, unchallenged findings of fact are presumed to be supported by competent evidence and are, therefore, binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). However, conclusions of law are subject to de novo review. In re J.S.L. , 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).
"If the trial court determines that at least one ground for termination exists, it then proceeds to the disposition stage where it must determine whether terminating the rights of the parent is in the best interest of the child[.]" In re D.H. , 232 N.C. App. at 219, 753 S.E.2d at 734. The trial court's decision at the dispositional stage is reviewed for an abuse of discretion, In re E.M. , 202 N.C. App. 761, 764, 692 S.E.2d 629, 630 (2010), which occurs only when the court's ruling is "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." White v. White , 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
III. Analysis
1. Motion to Dismiss
Mother first argues that her motion to dismiss DSS's termination petition should have been granted because the petition was "facially defective" and failed to state a claim for relief. More specifically, mother contends that the petition merely recited the applicable law and contained no specific factual allegations. According to mother, because the petition did not allege facts sufficient to determine that one or more grounds for terminating her parental rights existed, the trial court lacked the authority to "even hold[ ] a hearing" on the matter. See N.C. Gen. Stat. § 7B-1104(6) (2015) (requiring the petition to contain sufficient facts to determine the existence of at least one grounds for termination). We disagree.
Factual allegations contained in a petition to terminate parental rights need not be "exhaustive or extensive," but the allegations must "put a party on notice as to what acts, omissions or conditions are at issue." In re Hardesty , 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002). This standard is not met when a petition sets forth only a "bare recitation ... of the alleged statutory grounds for termination[.]" In re Quevedo , 106 N.C. App. 574, 579, 419 S.E.2d 158, 160 (1992) (emphasis omitted). Yet when "sufficiently detailed allegations [do] not appear on the face of the petition[, they] may be incorporated by reference." In re H.T. , 180 N.C. App. 611, 617, 637 S.E.2d 923, 927 (2006) (citing In re Quevedo , 106 N.C. App. at 579, 419 S.E.2d at 160 ).
Here, the petition alleged four different grounds for termination and stated the legal bases for the termination action. Moreover, copies of the trial court's July 2014 Adjudication and Disposition Order, which granted DSS custody of Connor, and the court's March 2015 Permanency Planning Order, which continued custody with DSS, were both attached to the petition and incorporated into the petition by reference. These orders contain facts sufficient to put mother "on notice as to what acts, omissions or conditions [were] at issue." In re Hardesty , 150 N.C. App. at 384, 563 S.E.2d at 82. The petition, therefore, alleged facts sufficient to permit a determination that grounds for the termination of mother's parental rights existed, and the trial court did not err in proceeding with the termination proceedings. Accordingly, the trial court properly refused to dismiss the petition.
2. Grounds for Terminating Mother's Parental Rights
Mother next argues that the trial court erred in concluding that she had not made reasonable progress toward correcting the conditions that led to the removal of Connor from her care. Specifically, mother contends that she did not willfully leave Connor in foster care because she frequently and appropriately exercised her visitation rights with Connor and was willing to make efforts "to remediate the removal conditions." Mother also argues that she made reasonable progress in addressing her mental health, substance abuse, and criminal issues as well as in improving her parenting skills. Based on this reasoning, mother contends that the trial court improperly terminated her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). We disagree.
N.C. Gen. Stat. § 7B-1111(a)(2) (2015) provides that parental rights may be terminated upon a finding that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than [twelve] months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." Thus, subdivision 7B-1111(a)(2) requires a two-part analysis, and the "trial court must find by clear, cogent, and convincing evidence that: (1) the parent willfully left the child ... in foster care or placement outside the home for more than twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child[.]" In re C.G.A.M. , 193 N.C. App. 386, 391, 671 S.E.2d 1, 5 (2008). "Willfulness under this section is less than willful abandonment, and does not require a finding of fault [by the parent]." In re Clark , 159 N.C. App. 75, 83, 582 S.E.2d 657, 662 (2003). "Willfulness may be found where even though a parent has made some attempt to regain custody of the child, the parent has failed to show reasonable progress or a positive response to the diligent efforts of DSS." Id. at 84, 582 S.E.2d at 662 (citation and quotation marks omitted).
Here, the trial court made ample findings of fact[4] concerning these factors. To begin, this Court has defined the twelve-month period in subdivision 7B-1111(a)(2) as "the duration of time beginning when the child was 'left' in foster care or placement outside the home pursuant to a court order, and ending when the motion or petition for termination of parental rights was filed[.]" In re A.C.F. , 176 N.C. App. 520, 527, 626 S.E.2d 729, 734 (2006) (emphasis omitted).
The trial court found that Connor had been placed in the custody of DSS since 19 March 2014. The court also found that its Adjudication and Disposition, initial review, and permanency planning orders continued Connor's custody with DSS until the petition to terminate mother's rights was filed on 30 April 2015-a period of approximately thirteen months. Accordingly, the trial court's evidentiary findings establish that Connor had been left in foster care for more than twelve months in satisfaction of subdivision 7B-1111(a)(2).
The court also found the following:
34. That ... mother completed an assessment at Monarch Behavioral Health on September 19, 2014 and was diagnosed with Bi-Polar disorder and Post-Traumatic Stress Disorder.
35. That ... mother completed a parenting education program....
38. That ... mother ... began attending [her third round of substance abuse] sessions on February 23, 2015 and last attended on June 18, 2015. Although ... mother participated appropriately, she continued to have positive drug tests ... for benzodiazepines.... [M]other tested positive for benzodiazepines eight times, and test negative seven times.
39. That ... mother provided a medications list to [social worker] Sarah Horne, and there were no medications on this list that would have resulted in positive test results for benzodiazepines.... [M]other on numerous occasions stated to Ms. Horne that she was not taking her prescribed medications....
44. That at the time of the removal of [Connor] from ... mother's home, ... mother had acknowledged to Social Workers that she was not complying with psychiatric treatment....
46. That ... mother was required to submit to random drug testing as a condition of her criminal probation.... [M]other ... violated [her probation] on two separate occasions in 2015 for failed drug tests.... [M]other was arrested on April 20, 2015 and again on May 19, 2015 due to testing positive for benzodiazepines. Each time, ... mother spent time in jail.... [M]other's probation was terminated on November 17, 2015.
47. That Social Worker Paris Floyd discussed these probations violations with ... mother and ... mother stated that the pharmacist who filled her prescriptions at Monarch Behavioral Health was a friend of [Connor's] foster parents and that the pharmacist had conspired with the foster parents to cause her to fail her drug test.
48. That following a March 15, 2015 drug test that was positive for benzodiazepines, ... mother told the Social Worker that the preservatives in her Sun [D]rop had caused her to test positive....
49. That during the time that [Connor] has been in the custody of [DSS], ... mother has not established safe and stable housing.... [M]other has had five different residences between March 19, 2014 and the dates of this TPR hearing....
57. That ... mother has never acknowledged any responsibility for the removal of [Connor] from her home.... [M]other told Social Worker Floyd that someone named Bennie had held her at gunpoint and made her take drugs, and that her meddling family members had called DSS. Dr. Simpson, in his written report of ... mother's psychological evaluation, stated that ... mother told him her late husband's stepson Jerry had threatened her at gunpoint and forced her to sell marijuana.... [M]other also acknowledged to Dr. Simpson that she had used marijuana on a daily basis until she was arrested in 2013 for selling marijuana....
59. That although ... mother completed parenting classes, she failed to demonstrate appropriate parenting skills during her visitation and telephone contact with [Connor]. On multiple occasions[,] ... mother has engaged in inappropriate conversations with [Connor] regarding her financial situation and telling [Connor] that he was coming home.... [M]other had to be instructed not to whisper to [Connor] during her visitation.... On some occasions, ... mother was observed or heard to be asking [Connor] very specific questions about his school schedule including which door he came in and out of, and his bus number, route and schedule.
60. That the Social Worker and visitation supervisor both talked to ... mother about their concerns with these subjects of conversation, but ... mother continued to engage in these discussions....
61. That the Court, during several review and permanency planning hearing[s], specifically instructed ... mother to not discuss the case or her financial situation with [Connor] and to not make promises to [Connor] regarding coming home, yet ... mother has continued to engage in these discussions....
63. That this pattern of behavior by ... mother is a clear indication to this Court that ... mother has a limited ability to understand or appreciate how her substance abuse and/or mental health affect [Connor]....
68. That ... mother has continued to demonstrate either unwillingness or an inability, based upon her mental illness, to accept any responsibility for the reasons and need for the removal of [Connor] from her custody, and likewise ... mother has not demonstrated any progress toward correcting those conditions.
69. That ... mother, as projected by Dr. Simpson, has consistently engaged in a pattern of distrust, defensiveness, and paranoia and continued blame of others for her situation. Although ... mother has clearly made efforts to comply with court-ordered treatment services including parenting education and substance abuse and mental health treatment, she continues to be unable or unwilling to modify her thought process or behavior such that she could provide proper care and supervision for [Connor] in a safe environment.
We conclude that the foregoing findings of fact are supported by clear, cogent, and convincing evidence. Furthermore, as demonstrated by these findings, mother did not make reasonable progress toward correcting the conditions that led to Connor's removal, which were, in large measure, due to mother's substance abuse and mental health problems. Indeed, the central focus of mother's case plan was the aggressive treatment of her psychological and substance abuse issues. Mother made some progress by completing parenting classes and attending several substance abuse treatment programs, but her limited progression in those areas was marked by an equal regression in them. For instance, after displaying some positive behavior during visits with Connor, mother repeatedly ignored DSS's and the trial court's admonishments for discussing her mental health, financial strain, and other inappropriate topics with Connor during visitation with him. Mother also failed to officially complete her substance abuse treatment due to testing positive for marijuana and benzodiazepines throughout the course of her sessions with multiple service providers. When mother did maintain periods of sobriety, she exhibited an increasingly paranoid outlook on all facets of her life, blaming DSS personnel, substance abuse counselors, family members, friends, and others for her predicament. Critically, the record demonstrates that mother made, at best, infrequent attempts to manage her dire mental health issues, as she admitted her failure to take the medications that were prescribed to address her specific psychological conditions.
All told, at the time when the final termination hearing was conducted, mother had not maintained suitable housing, had not followed all recommendations for psychiatric treatment and medication, had not demonstrated appropriate parenting skills, and had not demonstrated the ability to maintain sobriety. Though mother showed, at times, positive responses to DSS's efforts to help her improve her situation, those responses resulted in limited and minimal progress. Mother's responses to DSS's efforts were also sporadic and wholly insufficient to address the deep-rooted problems that she faced. It is well established that "[a] finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." In re Nolen , 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995) (citation omitted); see also In re C.M.S. , 184 N.C. App. 488, 494, 646 S.E.2d 592, 596 (2007) ("[A] parent's prolonged inability to improve his or her situation, despite some efforts and good intentions, will support a conclusion of lack of reasonable progress.") (citing In re B.S.D.S. , 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004) ). "Extremely limited progress is not reasonable progress." In re Nolen, 117 N.C. App at 700, 453 S.E.2d at 224-25 (citation omitted). We acknowledge that mother had a tall mountain to climb, but we also agree with the notion, implicit in the trial court's findings, that mother's actions demonstrated an inability and an unwillingness to make the climb.
Under these circumstances, mother's limited progress fell far short of the standard requirement of reasonable progress. The findings of fact set out above, therefore, support the trial court's conclusions that mother had willfully left Connor "in foster care for more than twelve months," and that she had not made reasonable progress under the circumstances to correct the conditions that led to Connor's removal. Accordingly, the trial court did not err in terminating mother's parental rights pursuant to subdivision 7B-1111(a)(2), and the court did not abuse its discretion by determining that the termination of parental rights was in the best interest of Connor.
Because grounds for termination were properly established pursuant to subdivision 7B-1111(a)(2), we need not address mother's additional arguments regarding termination pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1) and (a)(6). In re Stewart Children , 82 N.C. App. 651, 655, 347 S.E.2d 495, 498 (1986) (holding that once one statutory ground for termination is established, this Court need not address a respondent's challenges to other grounds).
IV. Conclusion
Because the trial court's July 2014 Adjudication and Disposition and March 2015 Permanency Planning Orders were attached to and incorporated by reference into DSS's petition to terminate mother's parental rights, the petition alleged facts sufficient to permit a determination that grounds for termination existed, and the trial court properly refused to grant mother's motion to dismiss the termination proceedings. In addition, the trial court's findings of fact, which met the standard of clear, cogent, and convincing evidence required in termination proceedings, supported the court's conclusion that mother's parental rights should be terminated pursuant to subdivision 7B-1111(a)(2).
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and McCULLOUGH concur.

A pseudonym is used to protect the identity of the juvenile and for ease of reading.

Mother's probation was terminated early, on 17 November 2015.

Mother did not cite Rule 12(b)(6) of the North Carolina Rules of Civil Procedure in her motion to dismiss, but it is apparent that her motion was made pursuant to this rule.

Mother argues that Findings of Fact 18 to 25, which outline the procedural history of the case, and Finding of Fact 26, which states "[t]hat the prior findings of fact of the Court in this matter are considered as clear and convincing evidence in this termination of parental rights hearing, and are consistent with the testimony and other evidence presented herein[,]" are improper. Specifically, mother argues that finding 26 was erroneous because findings contained in the prior dispositional, review, and permanency planning orders entered in this case were not subject to the clear, cogent, and convincing standard that applies in termination proceedings. However, mother made no objection when the trial court took judicial notice of the underlying court file, which included prior courts reports and orders, at the termination hearing. It is well established that " '[a] trial court may take judicial notice of earlier proceedings in the same cause[,]' " In re J.B. , 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005) (quoting In re Isenhour , 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991) ), and that the trial court, when presiding over a bench trial, is presumed to disregard any incompetent evidence. In re Huff , 140 N.C. App. at 298, 536 S.E.2d at 845 ; see In re S.D.J. , 192 N.C. App. 478, 487, 665 S.E.2d 818, 824 (2008) (citing In re J.B. and In re Huff and rejecting the respondent-parent's argument that "the trial court erred by taking judicial notice of and basing its findings of fact on all the prior orders in this case because all of the orders were not based upon clear, cogent, and convincing evidence"). As such, mother's challenge to Findings of Fact 18 to 26 is without merit.