**IN RE J.A.A. & S.A.A.**

[175 N.C. App. 66 (2005)]

---

IN RE: J.A.A. & S.A.A.

No. COA05-105

(Filed 20 December 2005)

**1. Termination of Parental Rights— guardian ad litem for parent—incapacity to provide care not alleged**

The trial court did not err by not appointing a guardian ad litem under N.C.G.S. § 7B-1111(a)(6) for the parent in a termination of parental rights proceeding where incapability to provide proper care for the children was not alleged and respondent did not request a guardian ad litem.

IN RE J.A.A. & S.A.A.

[175 N.C. App. 66 (2005)]

## 2. Mental Illness— termination of parental rights—Rule 17— guardian for parent—not appointed

The trial court did not abuse its discretion by not appointing a guardian ad litem under N.C.G.S. § 1A-1, Rule 17 for the parent in a termination of parental rights proceeding.

## 3. Constitutional Law— effective assistance of counsel—termination of parental rights

A termination of parental rights respondent was not denied effective assistance of counsel when her attorney informed the court that she did not need the appointment of a guardian ad litem. Respondent's attorney was familiar with respondent and vigorously and zealously represented her; moreover, there was overwhelming evidence supporting termination of respondent's parental rights.

## 4. Termination of Parental Rights— assignment of error— only one of three grounds for termination

Only one of the grounds in N.C.G.S. § 7B-1111(a) is necessary to terminate parental rights. Whether there was sufficient evidence to support one of those grounds in this case was not addressed where respondent did not assign error to the other two grounds cited by the trial court.

## 5. Termination of Parental Rights— relative available for custody—termination not an abuse of discretion

The trial court did not abuse its discretion by terminating parental rights when a sister was allegedly able to take custody. Whether a relative can take custody is for the dispositional rather than the adjudicatory phase, the court is not required to make findings on all of the evidence, the court may have considered this issue without mentioning it, and the sister's statement was equivocal.

Appeal by respondent from judgment entered 22 June 2004 by Judge Patricia K. Young in Buncombe County District Court. Heard in the Court of Appeals 14 September 2005.

*Charlotte W. Nallan, for petitioner-appellee Buncombe County Department of Social Services.*

*Judy N. Rudolph, for Guardian Ad Litem.*

*Carol Ann Bauer for respondent-appellant.*

IN RE J.A.A. & S.A.A.

[175 N.C. App. 66 (2005)]

STEELMAN, Judge.

Respondent-mother appeals the district court's order terminating her parental rights to two of her children, J.A. and S.A. For the reasons discussed herein, we affirm.

Because respondent-mother has not assigned error to any of the trial court's findings of fact, they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Those findings establish the following facts. Respondent-mother is the natural mother of four children, two of whom are the subject of this appeal. The minor children's legal father was incarcerated during the time the following described events occurred. Their biological father is unknown. Life in the home was one of chaos, drug abuse, and prostitution. Prior to the family's move to North Carolina, respondent lived in Lee County, Florida with her four children: Christina, Eric, J.A., and S.A. Respondent has a long history of drug abuse. While living in Florida, she would take pills, as well as use cocaine and marijuana with her children, including J.A. In addition, respondent and her daughter Christina engaged in prostitution to support their drug habit. Respondent's two husbands were abusive and engaged in significant criminal activities. Respondent's first husband sexually abused Christina, for which he was imprisoned, and her second husband was incarcerated for drug trafficking.

In October 2001, respondent's father died from heart disease. The next month her boyfriend died of leukemia. In December 2001, while at a Christmas party, respondent's oldest son, Eric, died of a drug overdose. Family members testified they believed respondent owed a neighbor money for drugs and when she failed to pay him he intentionally put an overdose into her son's drink. Following the funeral, respondent returned home to find a statement to the effect of "J.A.'s next" spray-painted on the side of their trailer. This was understood to be a threat that if respondent did not pay the money she owed for the drugs, J.A. would be killed. The next day, respondent left Florida and moved the children to Buncombe County, North Carolina.

While respondent's life was unstable before these deaths, it sharply declined thereafter. In the late night hours of 27 April 2002, the Buncombe County DSS received a telephone call from the minor children who were trying to locate their mother. Respondent had left the home at 10:00 a.m. and had not returned. An officer was dispatched and when he arrived at respondent's home, he found J.A. and S.A. alone with a registered sex offender, for whom there was an out-

IN RE J.A.A. & S.A.A.

[175 N.C. App. 66 (2005)]

standing arrest warrant. It appeared he had been staying at respondent's home on and off for three weeks. A social worker arrived at approximately 12:30 a.m. She found the condition of the home unsanitary, with no food in the home. The children were dirty and unkempt and had not bathed recently. The social worker testified "[S.A.'s] hair was so dirty it looked wet. Their clothes were dirty [and J.A.] had a foul odor. They appeared to not have been bathed for many days."

The children were immediately removed from the home. The trial court granted DSS non-secure custody. On 6 June 2002, the trial court adjudicated the minor children neglected and dependent. The trial judge entered this order with respondent's agreement. While in the custody of DSS, J.A. admitted he had sexually abused his sister, S.A., for years. There were also allegations that J.A. had been sexually abused as well, but these claims were not substantiated. While in DSS's custody, both children had significant emotional problems and had to receive extensive mental health treatment. On numerous occasions, each child was admitted to psychiatric treatment facilities— S.A. for suicidal tendencies, and J.A. for treatment of bi-polar disorder and aggressive behavior.

The trial court ordered respondent to obtain a drug and alcohol assessment, a psychological evaluation, and participate in parenting classes. Respondent failed to comply with this order. Instead, she engaged in prostitution, drug use, and at one time, was admitted to Broughton Hospital for treatment for suicidal ideation. Her treating physician reported respondent most likely did not suffer from a bi-polar disorder. Respondent was diagnosed as having antisocial personality disorder because she had cocaine dependency and was deceitful. The trial judge found respondent's testimony concerning her substance abuse not to be credible. Respondent failed to keep in contact with either child for almost a year. It was not until after DSS filed its petition for termination of her parental rights that respondent began to minimally comply with the court's order.

On 23 June 2004, DSS filed a petition for termination of parental rights to J.A. and S.A. Respondent filed an answer, but the children's father did not. The petition alleged the following grounds for termination: (1) respondent had neglected the minor children while they were in the care of DSS within the meaning of N.C. Gen. Stat. § 7B-101 (N.C. Gen. Stat. § 7B-1111(a)(1); (2) respondent willfully left her children in foster care for more than twelve months without demonstrating she had made reasonable progress to correct the conditions which led to the removal of the children (N.C. Gen.

IN RE J.A.A. & S.A.A.

[175 N.C. App. 66 (2005)]

Stat. § 7B-1111(a)(2)); and (3) respondent willfully failed to pay a rea-
sonable portion of the cost of care for the minor children while they
were in the custody of DSS (N.C. Gen. Stat. § 7B-1111(a)(3)). The
matter came on for hearing before the Buncombe County District
Court in February 2004. At the hearing, respondent testified that even
if the court did not terminate her parental rights to J.A., she did not
want him to live with her. The trial court terminated respondent's
parental rights as to both children, finding as a basis each of the three
grounds for termination alleged in the petition. The trial court further
determined it was in the best interests of both children that respond-
ent's parental rights be terminated and entered an order providing for
such termination. However, respondent did not file a timely notice of
appeal of the 22 June 2004 order terminating her parental rights.
Respondent filed a petition for writ of *certiorari* to this Court on 27
April 2005. This Court granted respondent's petition and allowed her
appeal of the order terminating her parental rights.

Tragically, on 11 September 2004, S.A. died in her residential
facility when a care provider attempted to restrain her, resulting in
her suffocation. Respondent's sister has qualified as the administra-
tor of S.A.'s estate and filed a wrongful death action. Respondent
asserts her appeal of the termination of her parental rights to S.A. is
not moot because if she prevails on appeal she would be entitled
to the proceeds from the wrongful death action under N.C. Gen. Stat.
§ 28A-18-2 and § 29-15.

**[1]** We first address respondent's argument that the trial court erred
in failing to appoint a guardian *ad litem* to represent her.

Pursuant to N.C. Gen. Stat. § 7B-1101(1) (2005):

> a guardian *ad litem* shall be appointed in accordance with the
> provisions of G.S. 1A-1, Rule 17, to represent a parent . . . (1)
> where it is alleged that a parent's rights should be terminated pur-
> suant to G.S. 7B-1111[a](6), and the incapability to provide
> proper care and supervision pursuant to that provision is the
> result of substance abuse, mental retardation, mental illness,
> organic brain syndrome, or another similar cause or condition.

*See also In re J.D.,* 164 N.C. App. 176, 180, 605 S.E.2d 643, 645 (not-
ing the duty of appointment arises when the allegation of incapability
under N.C. Gen. Stat. § 7B-1111(6) is alleged in the petition for termi-
nation), *disc. review denied,* 358 N.C. 732, 601 S.E.2d 531 (2004). In
the instant case, the petitions for termination of respondent's

parental rights contained no allegations that respondent was incapable of properly providing care for her children. Rather, the petition alleged the children were neglected within the meaning of N.C. Gen. Stat. § 7B-1111. Although the petition does contain reference to respondent's drug abuse and alleged mental illness, the trial court is not required to appoint a guardian *ad litem* "in every case where substance abuse or some other cognitive limitation is alleged." *In re H.W.*, 163 N.C. App. 438, 447, 594 S.E.2d 211, 216 (applying N.C. Gen. Stat. § 7B-602(b)(1)), *disc. review denied*, 358 N.C. 543, 603 S.E.2d 877 (2004).

N.C. Gen. Stat. § 7B-1101 requires that a guardian *ad litem* be appointed "in accordance with the provisions of G.S. 1A-1, Rule 17 to represent a parent . . . ." This means that where an allegation is made that parental rights should be terminated, the trial court is required to conduct a hearing to determine whether a guardian *ad litem* should be appointed to represent the parent. An allegation under N.C. Gen. Stat. § 7B-1111(a)(6) serves as a triggering mechanism, alerting the trial court that it should conduct a hearing to determine whether a guardian *ad litem* should be appointed. At the hearing, the trial court must determine whether the parents are incompetent within the meaning of N.C. Gen. Stat. § 35A-1101, such that the individual would be unable to aid in their defense at the termination of parental rights proceeding. The trial court should always keep in mind that the appointment of a guardian *ad litem* will divest the parent of their fundamental right to conduct his or her litigation according to their own judgment and inclination. *Hagins v. Redevelopment Comm.*, 275 N.C. 90, 102, 165 S.E.2d 490, 498 (1969).

This case is distinguishable from *In re T.W.*, 173 N.C. App. 153, 617 S.E.2d 702 (2005) and *In re B.M.*, 168 N.C. App. 350, 607 S.E.2d 698 (2005). In *In re T.W.*, although incapability was not alleged, the respondent specifically requested the court appoint her a guardian *ad litem* and she underwent psychological evaluation, in which the doctor recommended she be appointed a guardian *ad litem*. 173 at 155-56, 617 S.E.2d at 703. Despite this, the trial court failed to revisit the guardian *ad litem* issue during the entire ensuing proceedings. *Id.* at 159, 617 S.E.2d at 706. In *In re B.M.*, DSS's petition to terminate the respondents' parental rights alleged the parents' incapability as grounds for termination. 168 N.C. App. at 353, 607 S.E.2d at 703. In neither of these cases did the trial court conduct a hearing on whether a guardian *ad litem* should have been appointed.

In this case, neither incapability within the meaning of N.C. Gen. Stat. § 7B-1111(a)(6) was alleged, nor did respondent request that a guardian *ad litem* be appointed. The trial court inquired *ex meru moto* into the issue of whether respondent needed a guardian *ad litem* appointed after questions concerning her mental condition were brought to the judge's attention.

**[2]** The fact there was no allegation of incapacity in the petition does not end our inquiry. We must consider whether the trial court had a duty to appoint a guardian *ad litem* to represent respondent under Rule 17 of the Rules of Civil Procedure.

Rule 17(b)(2) provides:

> In actions or special proceedings when any of the defendants are . . . incompetent persons, whether residents or nonresidents of this State, they must defend by general or testamentary guardian, if they have any within this State or by guardian ad litem appointed as hereinafter provided; and if they have no known general or testamentary guardian in the State, and any of them have been summoned, the court in which said action or special proceeding is pending, upon motion of any of the parties, may appoint some discreet person to act as guardian ad litem, to defend in behalf of such . . . incompetent persons . . . .

N.C. Gen. Stat. § 1A-1, Rule 17(b)(2) (2005).

A trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a substantial question as to whether the litigant is *non compos mentis. Rutledge v. Rutledge,* 10 N.C. App. 427, 432, 179 S.E.2d 163, 166 (1971). The trial judge should make such inquiry as soon as possible in order to avoid prejudicing the party's rights. *Id.* "Whether the circumstances . . . are sufficient to raise a substantial question as to the party's competency is a matter to be initially determined in the sound discretion of the trial judge." *Id.*

*Rutledge* and similar cases expanded the trial court's authority under Rule 17 to determine competency in certain circumstances. This authority was questioned in *Culton v. Culton,* 96 N.C. App. 620, 622, 386 S.E.2d 592, 593 (1989), which held N.C. Gen. Stat. § 35A-1101 preempted the *Rutledge* line of cases, thereby divesting the trial court of jurisdiction to determine a defendant's competency. On appeal, our Supreme Court reversed *Culton* on procedural grounds. *Culton v.*

*Culton,* 327 N.C. 624, 398 S.E.2d 323 (1990). Subsequently, the General Assembly superseded this Court's holding in *Culton* by amending N.C. Gen. Stat. § 35A-1102 to provide that "nothing in N.C. Gen. Stat. § 35A-1101 shall interfere with the authority of a judge to appoint a guardian *ad litem* for a party to litigation under Rule 17(b) of the North Carolina Rules of Civil Procedure." 2003 N.C. Sess. Law ch. 236, § 4. Chapter 35A of the general statues sets forth the procedure for determining incompetency, which the trial judge must comply with when conducting a competency hearing under Rule 17.

Before the termination hearing began, the judge noted the petition did not allege respondent was incapable of providing care for her children and inquired as to whether either party was requesting that a guardian *ad litem* be appointed for respondent. Counsel responded as follows:

> [Respondent's Attorney]: Well, there is no allegations here pursuant to 7B-111[1(6)] that she's incapable, Your Honor. Certainly, we would argue that she has some mental health issues that impact her ability to parent the child but does not make her incapable or incompetent to provide care for the children. She certainly has the ability—I think she chooses not to do so. That's not incapable, Your Honor. That's just not doing it. And so we— there's nothing in there that says that she is incompetent or incapable of prosecuting her own case—not prosecuting—presenting her own case and assisting her counsel.

> [State's Attorney]: Yes, Your Honor, I would concur with [respondent's attorney], that has not been alleged, and I do think that there will be a lot of evidence given about mental issues. But it's not regarded to her incapacity.

During the trial, counsel for DSS requested that the judge stop the trial and order respondent to submit to a drug test due to her erratic behavior while testifying. The judge immediately stopped the trial. Respondent agreed to take a drug test, which was negative. Respondent stated she had a hyper-type personality. Her attorney acknowledged she was fine and the hearing could continue.

The trial court conducted a hearing pursuant to Rule 17 regarding the issue of respondent's competency. After careful review of the record and transcript, we are unable to say that the trial judge abused her discretion by not appointing a guardian *ad litem* for respondent.

**[3]** Respondent also contends she was denied effective assistance of counsel when her attorney informed the court that she did not need the appointment of a guardian *ad litem*.

A parent has a right to counsel in termination of parental rights proceedings. N.C. Gen. Stat. § 7B-1101 (2005); *In re Oghenekevebe*, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996). To prevail in a claim for ineffective assistance of counsel, respondent must show: (1) her counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) her attorney's performance was so deficient she was denied a fair hearing. *Id.*

Careful review of the record indicates respondent's attorney vigorously and zealously represented her client. Respondent's attorney had represented her for many months and was familiar with respondent's ability to aid in her own defense, as well the idiosyncrasies of her personality. Further, the record contains overwhelming evidence supporting termination of respondent's parental rights. Therefore, respondent has failed to demonstrate that her trial counsel's failure to request the appointment of a guardian *ad litem* denied her a fair trial, the outcome of which is reliable. This argument is without merit.

**[4]** Next, respondent contends the trial court erred in finding as grounds for termination that she wilfully left her children in foster care for more than twelve months without making reasonable progress to correct the conditions that led to their removal.

The trial court can terminate a respondent's parental rights upon the finding of one of the grounds enumerated in N.C. Gen. Stat. § 7B-1111(a). *See also In re Brimm*, 139 N.C. App. 733, 743, 535 S.E.2d 367, 373 (2000). In the instant case, the trial court cited three grounds for terminating respondent's parental rights. Respondent only assigned as error one of those grounds. "The appellant must assign error to each conclusion it believes is not supported by the evidence. N.C.R. App. P. 10. Failure to do so constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999). Since respondent does not contest the other two grounds, they are binding on appeal. As only one ground is necessary to support the termination, we need not address whether evidence existed to support termination based on N.C. Gen. Stat. § 7B-1111(a)(3). This argument is without merit.

**[5]** In respondent's final argument, she contends the trial court erred in finding it was in the best interests of S.A. to terminate her parental

rights when her sister, Loretta D'Souza, was able to take custody of her. We disagree.

The trial court is required to conduct a two-part inquiry during a proceeding for termination of parental rights. *In re Baker*, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003). First is the adjudicatory phase. *Id.* In this phase, the court must take evidence, find the facts, and adjudicate the existence or nonexistence of any of the circumstances set forth in N.C. Gen. Stat. § 7B-1111, which authorizes the termination of the respondent's parental rights. *Id.* (citing N.C. Gen. Stat. § 7B-1109(e)). Second, is the disposition phase, which is governed by N.C. Gen. Stat. § 7B-1110 (2005). *Id.* This statute provides that upon a finding:

> that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent . . . unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated.

N.C. Gen. Stat. § 7B-1110 (2005). The decision to terminate parental rights is vested within the sound discretion of the trial judge and will not be overturned on appeal absent a showing that the judge actions were manifestly unsupported by reason. *In Re V.L.B.*, 168 N.C. App. 679, 684, 608 S.E.2d 787, 791 (2005).

During the adjudicatory phase, the trial court does not consider whether there is a relative who can take custody of the minor child, but focuses on whether there is evidence to support termination on the grounds alleged in the petition. If a fit relative were to come forward and declare their desire to have custody of the child, the court could consider this during the dispositional phase as grounds for why it would not be in the child's best interests to terminate the respondent's parental rights.

Although the order does not contain any findings rejecting Mrs. D'Souza outright as a possible placement for S.A., the trial court is not required to make findings of fact on all the evidence presented, nor state every option it considered. *Fortis Corp. v. Northeast Forest Products*, 68 N.C. App. 752, 753, 315 S.E.2d 537, 538 (1984). Rather, it must only "make brief, pertinent and definite findings and conclusions about the matters in issue[.]" *Id.* Just because the trial judge did not mention he considered granting Mrs. D'Souza custody of S.A.

does not mean he did not consider it. Further, Mrs. D'Souza testified that while she initially wanted S.A. to live with her, she changed her mind upon learning that S.A. had been suicidal and felt she could not provide her the level of care and attention she needed. Based on this equivocal statement, we cannot say the trial court abused its discretion in not placing S.A. with Mrs. D'Souza rather than terminating respondent's parental rights. This argument is without merit.

AFFIRMED.

Judges HUNTER and TYSON concur.