McGEE, Chief Judge.
Respondent-Mother ("Respondent") appeals from an order adjudicating her son M.B. abused and neglected and her son G.B. neglected. Respondent's sole argument on appeal is that she received ineffective assistance of counsel. For the following reasons, we remand for further proceedings.
Respondent is the mother of M.B., born in 2006, and G.B., born in 2011 (together "the children"). The Guilford County Department of Social Services ("DSS") has been involved with the family since 2007. DSS received a report on 11 October 2013 that M.B. had disclosed to school personnel that Respondent had "attempted to drown him" in the bathtub and that Respondent had hurt M.B.'s foot when she "grabbed him and slammed him to the ground." DSS could not initially substantiate the allegations and closed the case; however, Detective Ruth Hines ("Detective Hines") of the Greensboro Police Department commenced an investigation.
On 1 November 2013, DSS received a report that Respondent, along with her live-in boyfriend and other friends, had stayed up drinking alcohol into the early morning hours in Respondent's home in the presence of the children; that at 3:00 a.m. that morning, Respondent left her home "to go to the store" and left the children alone in the home; and that later that morning, Respondent's boyfriend had died in the home. Respondent voluntarily placed the children with their paternal great aunt. Detective Hines received the same report and scheduled a forensic interview for M.B. with Robyn Miller ("Ms.Miller") at the Children's Advocacy Center. Respondent was subsequently arrested for felony child abuse inflicting serious injury and contributing to the delinquency of a juvenile. DSS obtained non-secure custody of the children on 24 February 2014 and filed juvenile petitions alleging that M.B. was an abused and neglected juvenile and that G.B. was a neglected juvenile.
The district court held an adjudication and disposition hearing on 25 April 2014. DSS presented testimony from social worker Shenika Bookman ("Ms.Bookman"), Detective Hines, and Ms. Miller. Ms. Bookman testified that DSS did not substantiate the October incident, that Respondent denied leaving her children alone, and that placement with the paternal great aunt was going well. Detective Hines testified that, after she was contacted by DSS, she interviewed seven people, including Respondent. Respondent denied trying to drown M.B. Detective Hines, who was present for the forensic interview, testified about M.B.'s answers during the interview. Ms. Miller testified that she conducted a forensic interview based upon a referral from law enforcement. Ms. Miller testified that, during the interview, M.B. stated Respondent tried to drown him in the bathtub, that Respondent slammed him on the floor injuring his foot, and that he went to a neighbor's house when Respondent told him to leave the home. The court received into evidence the police report and the forensic report.
Respondent's counsel did not object to the testimony of DSS's witnesses nor to the introduction of the reports. When the trial court asked if Respondent had any evidence to present, counsel responded: "Under the circumstances, Your Honor, I don't think that I will do that." After the trial court denied Respondent's counsel's motion to dismiss the petition, it found DSS had presented clear and convincing evidence with respect to the allegations in the petition.
At the disposition hearing, the court received into evidence the report of the Guardian ad Litem and DSS's disposition report regarding placement of the children. The court also heard testimony from the DSS social worker and from the Guardian ad Litem who drafted the respective reports. When Respondent spoke up during the disposition hearing to say she was "upset" because she did not have any witnesses to testify on her behalf, counsel stated: "I am trying to protect her (inaudible)." The trial court informed Respondent, who had criminal charges pending against her, that "[a]nything that comes out during this recording, sworn testimony proceeding, can be used against [her] at any time." Respondent stated that she understood. Counsel then stated that her decision not to have Respondent testify "may not have been a good one but it was the best [she] knew at the time."
By order filed 5 August 2014, the district court adjudicated M.B. abused and neglected and G.B. neglected. The district court made the following pertinent findings in support of its adjudication:
7. The juvenile, [M.B.], reported an incident, which allegedly happened on October 11, 2013, to Detective Hines, school officials, and during a forensic interview. He said [Respondent] attempted to drown him. He was consistent and demonstrated during the forensic interview how it occurred. During the forensic interview, [M.B.] said he thought he was going to die. He also said he saw [Respondent], on another occasion, take out a machete and destroy property of her brother. He said he never saw her use the machete against anyone, but that it scared him. [Respondent's] statement was consistent with [M.B.'s], except for the attempted drowning. Although that case was unsubstantiated initially by the Guilford County Department of Social Services, it has since been re-opened. No case decision has been reached to date.
8. During a bath, the juvenile, [M.B.], allegedly touched his younger brother, [G.B.], which upset [Respondent] who stated that it was unacceptable, moved the younger brother from the bathtub and slammed [M.B.] into an object, resulting in an injury [to] his ankle on that date.
9. While the Greensboro Police Department was investigating that incident, another allegation was received of the younger juvenile, [G.B.], being physically abused. That information was received during the forensic interview. There was bruising on [G.B.'s] body and a burn mark on his chest. [Respondent] and [M.B.] indicated that the burn mark was due to a vaporizer. However, Detective Hines received a photograph of that injury, and testified that it looked like a burn mark to her. Detective Hines has 23 years with the Greensboro Police Department and 15 years in the Family Victim Unit, and for the last 15 years, all she has handled are physical and sexual abuse juvenile cases. The Greensboro Police Department received photos, from an individual not identified at this hearing, but who has had contact with [G.B.] and had been taking photographs over a period of time, documenting his physical well-being. Those photographs were given to Detective Hines.
10. [Respondent] denies having attempted to drown [M.B.]; however, she stated she has spanked him. She stated she admitted she told him to leave on that day and he was not her son anymore. [M.B.] did leave, was last seen around 10:00 p.m. that evening, and reported missing around 1:28 a.m. on October 9, 2013, by the now deceased boyfriend of [Respondent]. [M.B.] was subsequently located across the street at a neighbor's home, sleeping on the floor. [M.B .] is 7 years old.
11. [Respondent] has been subsequently ... charged with (F) child abuse and neglect and (M) neglect.
....
13. [Respondent] denied the allegations to the detective and stated that one adult was left behind. [M.B.] awoke to [Respondent] and boyfriend arguing in the home that evening. Later that evening around 5:00 a.m., [Respondent's] boyfriend died in the home.
The court also provided that: "Based on the above Findings of Fact[,] along with the testimony from [Ms.] Bookman, Detective Hines, and Forensic Interviewer [Ms.] Miller, the juvenile, [M.B.], is abused and neglected, and the juvenile, [G.B.], is neglected." The court then ordered that the children remain in the custody of DSS, that Respondent enter into a case plan, and that DSS continue reunification efforts. Respondent appeals.
Respondent contests the adjudication of neglect and abuse on the ground that she received ineffective assistance of counsel.
"In cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent, the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the right." N.C. Gen.Stat. § 7B-602(a) (2013). "This right to counsel also includes the right to effective assistance of counsel." In re S.C.R.,198 N.C.App. 525, 531, 679 S.E.2d 905, 909, appeal dismissed,363 N.C. 654, 686 S.E.2d 676 (2009). To establish a successful claim that counsel's assistance was ineffective, a parent must "show that counsel's performance was deficient and the deficiency was so serious as to deprive the represented party of a fair hearing." In re Oghenekevebe,123 N.C.App. 434, 436, 473 S.E.2d 393, 396 (1996). "A parent must also establish [s]he suffered prejudice in order to show that [s]he was denied a fair hearing." In re S.C.R.,198 N.C.App. at 531, 679 S.E.2d at 909.
Respondent asserts counsel's performance was deficient when counsel did not object to the introduction of Ms. Miller's forensic report, to the introduction of Detective Hines's investigative report, and to the testimony of Ms. Miller, Ms. Bookman, and Detective Hines. Respondent argues that, had counsel objected to this evidence, the trial court would have been required to exclude the evidence and, as a result, would not have had competent evidence to support its findings of fact and conclusions of law, since the trial court expressly stated that its adjudication of M.B. as abused and neglected and G.B. as neglected was based upon the testimony of these three witnesses. Respondent also asserts counsel was deficient by failing to present any evidence to refute the petitions and by failing to "formulate any reasonable trial strategy and/or a coherent closing argument."
The record reflects that Respondent's counsel did not object to any testimony offered by Ms. Miller, Ms. Bookman, or Detective Hines, did not object to the reports tendered as evidence, and did not offer any evidence on Respondent's behalf. However, counsel did cross-examine DSS's witnesses, moved to dismiss the petition, and made an argument on Respondent's behalf at the adjudication phase. Thus, on the cold record before us, we simply cannot adequately address the merits of Respondent's claim, including any prejudice Respondent may have suffered. Cf. In re T.F.L.--- N.C.App. ----, ----, ---S.E.2d ----, ---- (filed 7 July 2015) (No. COA15-114) (rejecting the respondent's ineffective assistance of counsel claim where it was "clear from the record and the transcript of the termination hearing" that grounds existed to terminate the respondent's parental rights on the basis of neglect despite the respondent's counsel's failure to object to hearsay evidence). Therefore, we remand for a determination by the trial court of (1) whether the performance of Respondent's counsel "was deficient or fell below an objective standard of reasonableness," and (2) whether Respondent's counsel's performance "was so deficient [Respondent] was denied a fair hearing." See In re J.A .A.,175 N.C.App. 66, 74, 623 S.E.2d 45, 50 (2005).
REMANDED FOR FURTHER PROCEEDINGS.
Judges STEPHENS and DAVIS concur.
Report per Rule 30(e).
Opinion
Appeal by Respondent-Mother from order entered 5 August 2014 by Judge K. Michelle Fletcher in District Court, Guilford County. Heard in the Court of Appeals 8 June 2015.