IN THE SUPREME COURT OF NORTH CAROLINA

No. 229A19

Filed 24 January 2020

IN THE MATTER OF: S.D.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 25 February 2019 by Judge Marcus A. Shields in District Court, Guilford County. This matter was calendared for argument in the Supreme Court on 17 January 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*

*Parker Poe Adams & Bernstein LLP, by Collier R. Marsh, for respondent-appellee Guardian ad Litem.*

*Surratt Thompson & Ceberio PLLC, by Christopher M. Watford, for respondent-appellant father.*

ERVIN, Justice.

Respondent-father DeAngelo S. appeals from an order terminating his parental rights in his son, S.D.C.[1] After careful consideration of respondent-father's challenge to the trial court's termination order, we conclude that the trial court's order should be affirmed.

---

[1] S.D.C. will be referred to throughout the remainder of this opinion as "Sam," which is a pseudonym used to protect the child's identity and for ease of reading.

On 15 December 2016, the Guilford County Department of Health and Human Services filed a petition alleging that Sam was a neglected and dependent juvenile and, on the same day, obtained the entry of an order placing him in nonsecure custody. According to the allegations contained in the DHHS petition, Sam's mother had a history of substance abuse and used heroin on the day that she gave birth to Sam.[2] In addition, DHHS alleged that Sam's mother had an extensive child protective services history, that her parental rights in two children had previously been terminated, and that she had relinquished her parental rights in another child. DHHS also alleged that, while respondent-father had been identified as Sam's putative father, he had informed DHHS that he wanted to make sure that Sam was his biological child before making any effort to care for Sam or be involved in his life. After submitting to a paternity test on 16 December 2016, respondent-father was determined to be Sam's biological father.

On 17 April 2017, Judge Angela C. Foster entered an adjudication and dispositional order finding that Sam was a neglected and dependent juvenile. In support of this determination, Judge Foster found that Sam had been born prematurely and that he had been placed in a neonatal intensive care unit as the result of "toxic exposure" to controlled substances and the existence of withdrawal

---

[2] The trial court terminated the parental rights of Sam's mother in the same order in which it terminated the parental rights of respondent-father. As a result of the fact that Sam's mother has not sought appellate review of the trial court's termination order, we refrain from discussing the proceedings related to the termination of the mother's parental rights in Sam in any detail in this opinion.

symptoms. Judge Foster also noted that Sam's mother had entered into a case plan with DHHS and that respondent-father was scheduled to do so as well. In addition, Judge Foster stated that, while Sam's paternal grandmother had been identified as a potential relative placement, DHHS had declined to recommend that Sam be placed with his paternal grandmother because of concerns about her financial ability to care for Sam, her lack of an adequate means of transportation, and her criminal history. Based upon these findings and conclusions, Judge Foster ordered (1) that Sam remain in the custody of DHHS while expressly authorizing DHHS to utilize a kinship placement, (2) that further efforts to reunify Sam with his mother be ended, (3) that DHHS continue its attempts to reunify Sam with respondent-father, (4) that respondent-father enter into a case plan and comply with its provisions, and (5) that respondent-father have twice-weekly supervised visitation sessions with Sam.

On 2 May 2017, Judge Foster entered a permanency planning order in which she found that respondent-father had entered into a case plan with DHHS and was making progress toward complying with its provisions and that Sam had been placed in a foster home, in which he was doing well. After determining that the custody of and placement authority relating to Sam should be retained by DHHS, Judge Foster ordered that the primary permanent plan for Sam be reunification with respondent-father, that the secondary plan for Sam be adoption, that respondent-father continue to cooperate with DHHS and attempt to comply with his case plan if he wished to

work toward reunification, and that respondent-father have twice-weekly supervised visits with Sam.

Over the course of the next several months, the level of respondent-father's efforts to comply with his case plan appeared to falter. On 13 April 2018, Judge Foster entered a permanency planning order in which she found that respondent-father had stopped visiting with Sam or attempting to comply with the provisions of his case plan. As a result, Judge Foster changed Sam's primary permanent plan to adoption with a concurrent secondary plan of reunification with respondent-father and directed DHHS to initiate proceedings to terminate the parental rights of Sam's parents. After ordering respondent-father to comply with his case plan and to cooperate with DHHS, Judge Foster suspended respondent-father's visitation with Sam until respondent-father resumed making efforts to comply with the provisions of his case plan and informed respondent-father that, in the event that he continued to fail to comply with the provisions of his case plan, the court might order the cessation of reunification efforts at a subsequent proceeding.

On 7 June 2018, DHHS filed a motion seeking to have the parental rights of Sam's parents terminated in which it alleged that respondent-father's parental rights were subject to termination on the grounds of neglect, willful failure to make reasonable progress toward correcting the conditions that led to Sam's removal from the home, willful failure to pay a reasonable portion of the cost of Sam's care, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (7) (2017). After holding a

hearing on 12 February 2019 for the purpose of considering the issues raised by the termination motion, the trial court entered an order finding that all of the grounds for termination alleged by DHHS existed and concluding that the termination of respondent-father's parental rights in Sam would be in the child's best interests. Respondent-father noted an appeal to this Court from the trial court's termination order.

In his sole challenge to the trial court's termination order, respondent-father contends that the trial court abused its discretion by concluding that termination of his parental rights in Sam would be in Sam's best interests on the grounds that the trial court had failed to adequately consider whether Sam could be placed with a relative even though it was on notice that a potentially suitable relative placement existed. More specifically, respondent-father argues that the initial adjudication and dispositional order stated that Sam's paternal grandmother had been proposed as a placement option; that Sam's paternal grandmother had never been determined to be an unfit placement option by the court, even though DHHS had objected to Sam's placement with her; and that, given that the initial adjudication and dispositional order had been admitted into evidence at the termination hearing, the issue of whether Sam's paternal grandmother was a proper placement for the juvenile was a relevant dispositional factor which the trial court was required to consider and about which the trial court was required to make appropriate findings in its termination order. *See* N.C.G.S. § 7B-1110(a)(6) (2017). As a result, in light of the trial court's

failure to consider or make findings concerning the possibility that Sam might be placed with his paternal grandmother, respondent-father contends that the trial court's termination order should be reversed.

In seeking to persuade us to affirm the trial court's termination order, DHHS argues that nothing in N.C.G.S. § 7B-1110 required the trial court to address the extent to which a potential relative placement existed at the dispositional stage of a termination of parental rights proceeding, *see* N.C.G.S. § 7B-1110 (2017), and that the record before the trial court at the termination proceeding contained no evidence tending to show that the placement of Sam with his paternal grandmother would be appropriate. In addition, DHHS asserts that the trial court addressed its efforts to locate a suitable relative placement in earlier permanency planning orders.

Similarly, the guardian ad litem argues that a trial court may, but is not required, to consider the extent to which a relative placement is available during the dispositional phase of a termination of parental rights proceeding, *citing, e.g., In re J.A.A.*, 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) (stating that, "[i]f a fit relative were to come forward and declare their desire to have custody of the child, the court could consider this during the dispositional phase as grounds for why it would not be in the child's best interests to terminate the respondent's parental rights"). In view of the fact that no relative actually came forward at the termination hearing for the purpose of declaring his or her availability to assume responsibility for caring for Sam and the fact that the trial court found in the adjudication portion of its termination

order that "[Sam's mother] and [respondent-father] did not offer any acceptable alternative placement options" in the underlying neglect and dependency proceeding, the guardian ad litem contends that the trial court did, in fact, consider whether a relative placement was available during the dispositional phase of the termination of parental rights proceeding and found that no viable option for such an alternative placement existed.

According to well-established North Carolina law, a termination of parental rights proceeding involves the use of a two-stage process that includes an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2017). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 832 S.E.2d 698, 700 (N.C. 2019) (quoting N.C.G.S. § 7B-1109(f)). "If a trial court finds one or more grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), it then proceeds to the dispositional stage," *id.*, at which it "determines whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2017). In making this determination,

> [t]he court may consider any evidence, including hearsay evidence as defined in [N.C.]G.S. [§] 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:

(1)    The age of the juvenile.

(2)    The likelihood of adoption of the juvenile.

(3)    Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4)    The bond between the juvenile and the parent.

(5)    The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6)    Any relevant consideration.

*Id.* A trial court's determination concerning whether termination of parental rights would be in a juvenile's best interests "is reviewed solely for abuse of discretion." *In re A.U.D.*, 832 S.E.2d at 700 (citing *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016). An "[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 700–01 (alteration omitted) (quoting *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015)).

A trial court is required to consider whether a relative placement is available for a juvenile in deciding the issues raised in an abuse, neglect, and dependency proceeding. *See, e.g.,* N.C.G.S. §§ 7B-503(a), -506(h)(2), -903(a1), -906.1(e)(2) (2017). Although the trial court is not expressly directed to consider the availability of a relative placement in the course of deciding a termination of parental rights proceeding, it may treat the availability of a relative placement as a "relevant

consideration" in determining whether termination of a parent's parental rights is in the child's best interests, *see* N.C.G.S. § 7B-1110(a)(6), with the extent to which it is appropriate to do so in any particular proceeding being dependent upon the extent to which the record contains evidence tending to show whether such a relative placement is, in fact, available. *See, e.g., In re A.U.D.*, 832 S.E.2d at 702–03 (holding that a trial court is not required to make written findings concerning factors set out in section 7B-1110(a) in the absence of conflicting evidence relating to the factor in question). In the event that such conflicting evidence concerning the availability of a potential relative placement is presented to the trial court at the termination hearing, the trial court should make findings of fact addressing "the competing goals of (1) preserving the ties between the children and their biological relatives; and (2) achieving permanence for the children as offered by their prospective adoptive family." *Id.* at 703–04 (holding that the trial court's conclusion that terminating the father's parental rights would not be in the best interests of his children did not constitute an abuse of discretion based, in part, upon the existence of findings of fact relating to the existence of a potential relative placement for the children). On the other hand, in the event that the record does not contain any evidence tending to show the availability of a potential relative placement, the trial court need not consider or make findings of fact concerning that issue. *Id.* at 702–03 (holding that, "[a]lthough the better practice would have been for the trial court to make written findings as to the statutory factors . . . , we are unable to say that the trial court's

failure to do so under the unique circumstances of this case constitutes reversible error").

The record developed at the termination hearing is devoid of any evidence tending to show that a potential relative placement was available for Sam in the event that the trial court elected to refrain from terminating respondent-father's parental rights in the child. Admittedly, Judge Foster did find in the initial adjudication and dispositional order that Sam's paternal grandmother had been offered as a relative placement option for Sam and that DHHS had refrained from recommending that Sam be placed with her. However, in contending that no judicial official had ever determined that Sam's paternal grandmother was not an available relative placement option for the child, respondent-father overlooks the fact that Judge Foster determined in the initial adjudication and dispositional order and in a series of subsequent permanency planning orders that Sam's best interests would be served by remaining in DHHS custody rather than being placed with a relative. Thus, we have no hesitation in concluding that Sam's potential placement with a relative was not a factor that the trial court was required to consider or make findings about during the dispositional phase of this termination of parental rights proceeding. As a result, the order terminating respondent-father's parental rights in Sam is affirmed.

AFFIRMED.