An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-427

Filed 18 February 2026

Henderson County, Nos. 24JA000001-440, 23JA000005-440

IN THE MATTER OF: M.G.C. AND L.S.C.

Appeal by respondents from orders entered 31 October 2024 by Judge Abe Hudson in Henderson County District Court. Heard in the Court of Appeals 28 January 2026.

> *Vitrano Law Offices, PLLC, by Sean P. Vitrano, for respondent-appellant father.*
>
> *Mercedes O. Chut for respondent-appellant mother.*
>
> *Jane R. Thompson for petitioner-appellee Henderson County Department of Social Services.*
>
> *McGuireWoods LLP, by Bradley R. Kutrow, guardian ad litem.*

DILLON, Chief Judge.

Respondent-Mother ("Mother") and Respondent-Father ("Father") appeal from the trial court's orders terminating their parental rights on several grounds. For the reasoning below, we affirm the trial court's orders.

## I.    Background

This appeal arises from the trial court's termination of Mother and Father's parental rights to their children, Mandy and Lucas.[1]

Mother and Father were previously involved with the Henderson County Department of Social Services ("HCDSS") with respect to their *other* two children, K.C. and M.C., for a variety of reasons, such as Mother's and Father's substance abuse and allegations of domestic violence.  HCDSS's involvement ultimately led to the involuntary termination of Mother's and Father's rights to K.C. and M.C. in early 2022.  Then, Mother gave birth to Mandy in January 2023.

Mere days after Mandy's birth, HCDSS filed a petition alleging Mandy to be neglected, and received non-secure custody.  Two months later, Mandy was adjudicated neglected, and in her permanency planning order the trial court set out several requirements for reunification.

Approximately one year after Mandy's birth, Mother gave birth to Lucas, who tested positive for methamphetamine and amphetamine.  HCDSS filed a petition alleging neglect and was awarded non-secure custody.

---

[1] *See* N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the minor child).

Ultimately, in July of 2024, HCDSS filed termination petitions for both children, and following a hearing, the trial court terminated Mother's and Father's parental rights to both children. Mother and Father appealed.

## II. Analysis

We first address Mother's arguments and then turn to Father's.

### A. Standard of Review

When a trial court is confronted with the question of whether to terminate parental rights, it utilizes a two-step process. *In re Z.J.W.*, 376 N.C. 760, 765 (2021); *see also* N.C.G.S. §§ 7B-1109, -1110 (2023). The first step is the adjudicatory stage, where the trial court examines whether there exists at least one ground for termination as set out in G.S. 7B-1111(a). N.C.G.S. § 7B-1109(e). The petitioner has the burden to prove by " 'clear, cogent, and convincing evidence' the existence of [a ground of termination.]" *Id.* at (f). "After an adjudication that one or more grounds for terminating a parent's rights exists," the trial court "determine[s] whether terminating the parent's rights is in the juvenile's best interest[,]" at the dispositional stage. N.C.G.S. § 7B-1110(a).

We "review the evidence in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111 (1984). If evidence supports a trial court's finding, but other evidence could sustain a contrary finding, we are "bound by the trial court['s] findings of fact." *Id.* at 110−11. Further, findings of fact

that go unchallenged "are deemed supported by competent evidence and are binding on appeal." *In re D.M.*, 375 N.C. 761, 767 (2020). We review the trial court's conclusions of law de novo. *In re T.M.L.*, 377 N.C. 369, 371 (2021).

## B. Mother's Appeal

Mother contends the trial court erred in terminating her parental rights with respect to Mandy and Lucas. We disagree and conclude (1) with respect to Mandy, Mother failed to challenge one of the four grounds of termination, and (2) with respect to Lucas, there are sufficient, properly supported findings that support the conclusion there were grounds to terminate Mother's rights pursuant to G.S. 7B-1111(a)(3).

## 1. Mother & Mandy

The trial court's order terminating Mother's parental rights to Mandy provided four separate grounds for termination. In Mother's brief, she challenges only three grounds and fails to challenge the trial court's determination that grounds existed to terminate her rights under G.S. 7B-1111(a)(2). "[A] finding of only one ground is necessary to support a termination of parental rights." *In re M.A.*, 374 N.C. 865, 869 (2020) (quotation omitted) (alteration in original). Failure to assign error to the trial court's determination that a ground exists "constitutes an acceptance of [that] conclusion and a waiver of the right to challenge said conclusion as unsupported by facts." *In re J.A.A.*, 175 N.C. App. 66, 74 (2005) (quotation omitted). Therefore, because Mother failed to challenge *all* grounds supporting termination of her parental rights, she accepted the trial court's conclusion grounds exist under G.S. 7B-

1111(a)(2) and waived her right to challenge such conclusion.  And on that basis, we affirm the trial court's order terminating her parental rights with respect to Mandy.

### 2.  Mother & Lucas

General Statute 7B-1111(a)(3) permits the termination of parental rights if:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C.G.S. § 7B-1111(a)(3) (2023).  " '[C]ost of care' refers to the amount it costs [DSS] to care for the child, namely, foster care." *In re Montgomery*, 311 N.C. at 113.  "A finding that a parent has [the] ability to pay support is essential to termination for nonsupport on this ground." *In re Ballard*, 311 N.C. 708, 716–17 (1984).

Child support orders are premised on the needs of the child and the parent's ability to pay. *Coble v. Coble*, 300 N.C. 708, 712 (1980); *see also In re J.M.*, 373 N.C. 352, 359 (2020).  Thus, when a "parent is subject to a valid child support order, 'there is no requirement that [the] petitioner independently prove or that the termination order finds as fact [the] respondent's ability to pay support during the relevant statutory time period.'" *In re S.C.C.*, 379 N.C. 303, 311 (2021) (quoting *In re J.M.*, 373 N.C. at 359).

For Lucas's termination order, the trial court found three different grounds

warranting termination. With respect to G.S. 7B-1111(a)(3), Mother argues the trial court did not hear evidence of Lucas's cost of care, failed to address the cost of such care and Mother's ability to pay, and whether certain supplies Mother provided were sufficient. Thus, Mother contends the trial court erred in finding grounds to terminate Mother's rights pursuant to G.S. 7B-1111(a)(3). Because only one ground is required to terminate Mother's parental rights to Lucas, *see In re M.A.*, 374 N.C. at 869, we reject Mother's contentions and conclude the trial court properly terminated Mother's rights under G.S. 7B-1111(a)(3).

Regarding Lucas, the trial court heard the following relevant testimony regarding Lucas's cost of care and Mother's failure to pay child support:

> Q: Did [Mother] contribute to [Lucas's] cost of care?[2]
>
> A: No.
>
> . . . .
>
> Q: Is she currently ordered to pay child support for [Lucas]?
>
> A: Yes.
>
> Q: And did she attend court dates for that matter?
>
> A: [Mother] was served with the complaint on February 9th of 2024. Her first court date was on March 13th. She did not appear. It was continued until April 24th of 2024. Again, she did not appear. She continued -- it was continued to May 29th, 2024. She did not appear. It was continued again until June 26, 2024 where she didn't appear. And then on June 26, 2024, the Court ordered --

---

[2] What's more, the trial court specifically found "[Mother] made no child support payments in [January, February, March, April, May, June, and July] 2024."

was entered in her absence for her to pay $50 a month starting July 1st.

Q: And has she made any payments on [Lucas's] case?

A: She has not.

This evidence, and other evidence offered at the hearing, prompted the trial court to enter the following uncontested findings of fact:

> 606. [Mother] has not cooperated with the Child Support Enforcement Agency or sufficiently contributed to the juveniles' cost of care.
>
> 607. [Mother] did not comply with a child support order, requiring her to pay the minimum $50 per month for [Lucas] beginning in July 2024.
>
> 608. [Mother] provided $0 in financial support for [Lucas] before or after the entry of the child support order in June 2024. His cost of care would be more than $0 as he requires food, shelter, clothing, and other necessities.
>
> 609. However, [Mother] did bring some clothes to supervised visits. She also brought snacks and milk to the visits.[3]
>
> 610. Today [Mother] said that she "probably could've provided more financially" and that parents are fully able to provide for [the children].
>
> 611. [Mother] was able to pay more than $0 during the first six months of this year, which would be the six months immediately filing the Motions in the Cause.
>
> 612. [Mother's] defense of her non-payment was that she was confused about if she was going to pay, when to pay, or if she needed to pay. [Mother] claimed that she spoke to HCDSS about the issue and "they were unaware" she had

---

[3] *See In re J.C.J.*, 381 N.C. 783, 790 (2022).

been sued for child support.

613. The Court finds these claims to be unfounded. The mother agreed to pay $50 per month in child support for [Mandy], beginning in February [2023], and signed an agreement as to such terms.

614. [Mother] was also validly served with a complaint to establish such an order for [Lucas] in February 2024 and elected not to cooperate with the Child Support Enforcement Agency or the Court in the establishment of that order.

615. Further, [Mother] was present for permanency planning hearings where her progress on her reunification plan was discussed, including failure to make child support payments as ordered or to otherwise meaningfully contribute to the juveniles' needs.

Considering the above findings of fact, the trial court concluded: "[Lucas] has been placed in the custody of [HCDSS] and [Mother] has, for a continuous period of six months immediately preceding the filing of this motion, willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so."

Again, "[a] finding that a parent has [the] ability to pay support is essential to termination for nonsupport on this ground." *In re Ballard*, 311 N.C. at 716–17. Additionally, findings which reflect (1) a reasonable portion of the cost of care of the child is a "sum greater than zero," (2) the parent has the ability to pay a "sum greater than zero," and (3) the parent failed to pay such sums are sufficient to support an adjudication under G.S. 7B-1111(a)(3). *In re S.E.*, 373 N.C. 360, 367 (2020).

Most importantly, even in the absence of a child support order, parents have an "obligation to pay [their child's] reasonable costs, because parents have an inherent duty to support their children." *Id.* at 366.

First, Mother contends the trial court did not hear evidence of Lucas's cost of care. We disagree. The trial court heard social worker Moore's testimony that HCDSS had placed Lucas in foster care two days after his birth, Mother did not contribute to Lucas's cost of care while in foster care, and Mother was eventually ordered to pay fifty dollars a month in child support. As mentioned above, the amount set for a child support order is based on the child's needs and the parent's ability to pay. *See In re J.M.*, 373 N.C. at 359.

The trial court heard evidence, based on a combination of Lucas's needs and Mother's ability to pay, it cost at least fifty dollars a month to support Lucas. The trial court also heard evidence tending to show Lucas had been in foster care since birth. Taken together, the evidence the trial court heard warrants the finding Lucas's cost of care while in foster care was an amount greater than zero dollars. Therefore, trial court's finding that Lucas's cost of care was greater than zero dollars is supported by sufficient evidence.

Second, Mother argues that the trial court failed to address Lucas's costs and

Mother's ability to pay. We believe *In re S.E.* controls.[4] There, the trial court terminated the mother's parental rights to her four children, citing several grounds, including under G.S 7B-1111(a)(3). *In re S.E.* 373 N.C. at 363. The mother conceded she had failed to pay anything towards the children's cost of care and argued she did not know she could pay or how to pay. *Id.* at 365–66.

The trial court in *In re S.E.* found the mother was able to pay more than zero dollars a month for her children's support and that the cost of her children's care exceeded zero dollars. *Id.* at 367. The trial court also found that, during the relevant six-month period the mother failed to pay *any* money for the cost of the children's care. *Id.* Our Supreme Court held "the findings . . . fully support the trial court's conclusion that grounds exist to terminate [the mother's] parental rights based upon her willful failure to pay a reasonable portion of the cost of care for the children during their placement in DHHS custody pursuant to [G.S. 7B-1111(a)(3)]." *Id.*

Here, as set out in the findings above, the trial court found "[Mother] provided $0 in financial support for [Lucas] before or after the entry of the child support order in June 2024. His cost of care would be more than $0 as he requires food, shelter, clothing, and other necessities." Additionally, the trial court expressly found

---

[4] Mother's reliance on *In re D.R.J.*, 381 N.C. 381 (2022) is misplaced. As Mother correctly notes, our Supreme Court reversed a trial court's order that terminated a father's parental rights even though the trial court failed to hear evidence or make findings about the child's cost of care and the father's ability to pay. *In re D.R.J.*, 381 N.C. at 392–93. Here, though, the trial court did hear such evidence and made such findings.

"[Mother] was able to pay more than $0 during the first six months of this year, which would be the six months immediately [before] filing the Motions in the Cause." Thus, as was the case in *In re S.E.*, Mother, during the relevant six-month period, failed to pay *any* money towards Lucas's cost of care despite being capable of doing so, and that Lucas's cost of care was greater than zero dollars. We also agree with the trial court that Mother's failure to pay was willful. These findings "fully support the trial court's conclusion that grounds exist to terminate [Mother's] parental rights . . . pursuant to [G.S. 7B-1111(a)(3)]." *See id.* at 367.

Therefore, we conclude the trial court's findings were supported by clear, cogent, and convincing evidence, and those findings in turn supported the trial court's conclusion that there were grounds to terminate Mother's parental rights to Lucas pursuant to G.S. 7B-1111(a)(3). Accordingly, the trial court did not err.

### C. Father's Appeal

Father's attorney, pursuant to N.C. R. App. P. 3.1(e), filed a no-merit brief with respect to both children. After reviewing the record, we affirm the trial court's orders.

To quell any doubts, one ground for termination, as found by the trial court, existed because (1) Father's parental rights as to another child were involuntarily terminated, and (2) Father lacks the ability or willingness to establish a safe home. *See* N.C.G.S. § 7B-1111(a)(9). A "safe home" is one "in which the juvenile is not at substantial risk of physical or emotion abuse or neglect." N.C.G.S. § 7B-101(19).

Father does not challenge any findings of fact and as a result, the findings are

binding on appeal. *See In re D.M.*, 375 N.C. at 767. We conclude that of the trial court's many findings of fact, there were sufficient findings for the trial court to conclude "[t]he parental rights of [Father] with respect to another child of [Father] have been terminated involuntarily by a court of competent jurisdiction and [Father] lacks the ability or willingness to establish a safe home."

For example, *merely some* of the uncontested findings show: (1) in April of 2022, Father's rights to two other children were terminated; (2) after Mandy's birth and placement with HCDSS, Father failed to submit or refused several HCDSS requested drug tests and his "very serious substance abuse problem" persisted; (3) Father suffered a stroke while he was smoking methamphetamine at home; (4) Father failed to obtain substance abuse treatment; (5) Father failed to complete a domestic violence intervention program, provide proof of income or pay child support, and attend supervised visitation and medical appointments; (6) Father failed to be involved or communicate with HCDSS except when Mother helped to facilitate; (7) Father failed to demonstrate "he can maintain a safe and appropriate home for [Mandy and Lucas;]" and (8) Father "lacks the ability or willingness to establish a safe home." Thus, these example findings and the other findings within the trial court's orders are sufficient to support the trial court's conclusion that grounds exist to terminate Father's rights to Mandy and Lucas pursuant to G.S. § 7B-1111(a)(9) in that Father's substance abuse issues and the trial court's unaddressed concerns prevent him from establishing a "safe home."

We also agree with the trial court that termination was in Mandy's and Lucas's best interests during the dispositional stage. *See* N.C.G.S. § 7B-1110(a) (directing the trial court to consider and make relevant findings on age, "likelihood of adoption," whether termination aids in "accomplishing the permanent plan," the child's bond with the parent and "proposed adoptive parent," and "any relevant consideration"). The trial court's best interest analysis is reviewed for abuse of discretion. *In re A.R.A.*, 373 N.C. 190, 199 (2019).

Here, among other findings, the trial court found: (1) Mandy's and Lucas's age; (2) that termination would accomplish Mandy's and Lucas's most permanent plan; (3) there is a high likelihood of adoption by the foster home both children have been placed at while in HCDSS custody; and (4) neither child has a bond or much of a bond with Father, but both Mandy and Lucas have "very strong bond[s]" with their foster parents. In light of these unchallenged findings, the trial court did not abuse its discretion in concluding termination of Father's rights to Mandy and Lucas were in the children's best interests.

Additionally, Father, pursuant to N.C. R. App. P. 3.1(e), filed a pro se brief outlining several arguments. For example, Father argues the trial court violated due process by beginning the hearing without Father present and erred in failing to reopen evidence. After reviewing the arguments raised in Father's pro se brief, the record, and the applicable law, we conclude there is nothing to support any argument for relief.

For instance, Father argues by beginning the hearing before Father and Mother arrived, despite the parents being late and their counsel being present, the trial court deprived the parents of due process. "A parent's absence from termination proceedings does not itself amount to a violation of due process." *In re J.E.*, 377 N.C. 285, 290 (2021).

Likewise, Father's pro se brief contends his trial counsel attempted to offer various medical records after moving to reopen the evidence. However, it appears that those documents were not included in the record, and a review of the hearing transcript does not reveal Father's trial counsel making any such offering or motion. *See Thompson v. Rock Barn Properties, Inc.*, 299 N.C. App. 143, 147 (2025) ("Failure to include the necessary portions of the record can only lead to one result: the affirmation of the judgment below."). Thus, the trial court did not err in terminating Father's rights.

## III. Conclusion

In light of the foregoing, the trial court correctly determined that at least one statutory ground existed to terminate the Mother's and Father's' parental rights. Accordingly, we affirm the trial court's orders.

AFFIRMED.

Judges TYSON and CARPENTER concur.

Report per Rule 30(e).